**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN BAR ASSOCIATION,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>EXECUTIVE OFFICE<br>OF THE PRESIDENT, *et al.*,<br><br>　　　　　*Defendants*. | Case No. 1:25-cv-01888-AHA |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**
**DISCOVERY FROM THE WHITE HOUSE**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

    I.      THIS COURT SHOULD DENY PLAINTIFF'S MOTION TO COMPEL BECAUSE ITS DISCOVERY REQUESTS DIRECTED AT THE WHITE HOUSE ARE CONTRARY TO *CHENEY* AND VIOLATE THE SEPARATION OF POWERS. ...................................................................................... 3

          A.      Plaintiffs Must Pursue Available Alternative Sources of Discovery Before Seeking Discovery from the White House…………………………………6

          B.      The ABA's Document Requests are Fatally Overbroad and Unduly Burdensome. ........................................................................................ 12

    II.     THIS COURT SHOULD STAY ANY ORDER AUTHORIZING WHITE HOUSE DISCOVERY TO ALLOW DEFENDANTS TO PURSUE APPELLATE OPTIONS…………………………………………………………………...19

CONCLUSION.................................................................................................................. 19

CERTIFICATE OF SERVICE

**INTRODUCTION**

Plaintiff American Bar Association ("Plaintiff") moves to compel White House discovery "[f]or every one of Plaintiff's sixteen" requests for production ("RFPs"), each of which, Plaintiff says, goes to evidence of a purported policy of issuing Executive Orders (or "EOs") to law firms. Mot. to Compel Government Resp. to ABA's Reqs. for Produc. Nos. 1-16 at 1, ECF No. 61. However, Plaintiff's RFPs raise grave separation-of-powers concerns. The sweeping discovery Plaintiff has propounded on the White House flatly contravenes the Supreme Court's instructions regarding the "high respect that is owed to the office of the Chief Executive" in the conduct of litigation, and severely burdens "the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 385 (2004).  The Supreme Court made clear that discovery directed at the White House must be reserved for the most exceptional of circumstances. *See id*. at 385-92.  It is permissible, if at all, only when strictly necessary; only after all other avenues for resolving the plaintiff's claims have been explored; and only when drawn as narrowly as possible. *Id*.  Plaintiff's RFPs satisfy none of those requirements. To avoid setting the Executive and Judicial Branches on a "collision course" for "constitutional confrontation," this Court should deny Plaintiff's motion to compel. *Id.* at 389.

**BACKGROUND**

The background for this matter is set forth in Defendants' motion to dismiss, ECF No. 22-1, which the district court denied on March 31, 2026, Mem. Op. & Order, ECF No. 43.  Briefly, Plaintiff's Complaint alleges that the President issued executive orders to certain law firms and settled with others. *See* Compl. ¶ 4, ECF No. 1.  The ABA asks the Court to declare a purported

1

policy of issuing EOs to law firms to be unconstitutional and to enjoin the issuance or implementation of EOs like the ones issued in the spring of 2025. *Id.* ¶¶ 22, 269–77.[1]

Following the denial of Defendants' motion to dismiss, on May 12, 2026, the parties filed a Joint Discovery and Case Management Report, which, as relevant here, included a proposal setting forth an expedited procedure for resolving discovery disputes under *Cheney*. *See* ECF No. 55 at 7. The following day, Plaintiff served its First Set of Requests for Production to Defendants (Nos. 1-25). ECF No. 61-1. Among Plaintiff's RFPs are 16 document requests directed at the Executive Office of the President ("EOP"). *See generally id.*[2] Shortly after service of the RFPs, Defendants notified Plaintiff of their view that substantially all of Plaintiff's document requests directed at the Executive Office of the President were overbroad and contrary to *Cheney*. *See generally* ECF No. 61-3.

On June 4, 2026, the Court entered its Scheduling Order, adopting the proposed procedure for resolving discovery disputes pursuant to *Cheney*. ECF No. 57 at 2-3. Upon entry of the Scheduling Order, the parties began conferring regarding Defendants' *Cheney*-based objections to RFPs 1-16 directed at the White House. *See generally* ECF No. 61-3. Specifically, Defendants emphasized the separation-of-powers issues in propounding discovery on the White House and suggested alternative sources of some of the information Plaintiff sought, such as certain third

---

[1] Challenges by individual law firms to some of these EOs are currently pending before the U.S. Court of Appeals for the District of Columbia.  *See* Nos. 25-5241, 25-5265, 25-5277, 25-5310 (D.C. Cir.).

[2] Plaintiff also directed several RFPs to specific agencies: RFPs 17-18 to the Office of Management and Budget ("OMB"); RFPs 19-22 to the U.S. Department of Justice ("DOJ"); and RFP 23 to the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* ECF No. 61-1 at 16-18. Plaintiff directed the remaining RFPs, RFPs 24-25, to "All Agency Defendants"— meaning "all Defendants other than Defendant Executive Office of the President," *i.e.*, the 29 named agencies and each respective agency head. *Id.* at 3, 17-18.

parties—like Plaintiff's own members—or other named Defendants upon which Plaintiff directed similar discovery requests. *Id*.

On June 12, 2026, Defendants served their Responses and Objections to Plaintiff's RFPs in which Defendants reiterated their separation-of-powers objections to RFPs 1-16 under *Cheney*. ECF No. 61-2. Upon exhausting efforts to narrow or otherwise reach agreement regarding the RFPs, the parties requested a pre-motion conference regarding Plaintiff's request to move to compel discovery on the White House, which the Court held on June 24, 2026. By Minute Order entered on June 25, 2026, the Court authorized Plaintiff's requested motion to compel, directing the parties to submit briefs regarding whether each of the RFPs at issue is consistent with *Cheney*.

## ARGUMENT

### I.   THIS COURT SHOULD DENY PLAINTIFF'S MOTION TO COMPEL BECAUSE ITS DISCOVERY REQUESTS DIRECTED AT THE WHITE HOUSE ARE CONTRARY TO *CHENEY* AND VIOLATE THE SEPARATION OF POWERS.

The Supreme Court has repeatedly held that "[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). The President's "unique position in the constitutional scheme" "counsel[s] judicial deference and restraint." *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 753 (1982). And because discovery against the Executive Office of the President raises the prospect of a "'constitutional confrontation'" between the Executive and Judicial Branches, the Supreme Court has made clear that it is reserved for exceptional circumstances and that such confrontations "should be avoided whenever possible." *Cheney*, 542 U.S. at 389-90 (quoting *United States v. Nixon*, 418 U.S. 683, 692 (1974)).

The Supreme Court's decision in *Cheney* illustrates these principles. There, President George W. Bush had established a "National Energy Policy Development Group" within the

3

Executive Office of the President to help develop national energy policy over five months. *Cheney*, 542 U.S. at 373. The Group was headed by the Vice President and staffed exclusively by other senior government officials. *Id*. Because the Group was composed entirely of federal government employees, it was not subject to the Federal Advisory Committee Act's open meeting and disclosure requirements. *See id*. The plaintiffs in *Cheney* sought broad discovery into the Group's activities so that they could establish that private individuals were de facto Group members, subjecting the Group to the Act. *Id*. at 375. After the lower courts granted that "overly broad" request and "ignored" the White House's asserted interests, *id.* at 375, 377-78, 388-89, the Supreme Court reversed, rejecting the argument that privilege would be sufficient to protect those interests. *See id*. at 376-78. The Court emphasized that the case did not present "a routine discovery dispute" and that the courts had failed to take adequate account of the "special considerations" that "control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Id*. at 385.

*Cheney* made clear that discovery into the White House should be permitted only as a last resort. District courts must "explore other avenues" to avoid it, and that courts must ensure that any permitted discovery is "precisely identified" and no broader than necessary to serve its purpose. *Id*. at 387, 390. The Court also expressly rejected the view that White House defendants may adequately safeguard their interests by asserting privilege over specific documents. *Id*. at 385. To the contrary, the need to "winnow the discovery orders by asserting specific claims of privilege and making more particular objections" was itself a burden on the Executive Branch that raised constitutional concerns. *Id*. at 389. The Court accordingly vacated the denial of mandamus and instructed courts to "be sensitive to requests by the Government for interlocutory appeals" to resolve merits questions that would obviate the need for discovery. *Id*. at 392.

4

Plaintiff's very *first* set of discovery requests flout the principles articulated in *Cheney*. Many of these requests seek "documents or other materials that reflect presidential decisionmaking and deliberations," *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997), or otherwise reveal "the process of shaping policies and making decisions" by White House officials, *Nixon*, 418 U.S. at 708. By Plaintiff's own telling, its 16 RFPs directed at the White House fall into three buckets: (1) "documents and communications exchanged with third parties about the Law Firm orders and Agreements," ECF No. 61 at 2 (referring to RFPs 1-7, 15); (2) White House "communications exchanged with other federal agency Defendants about the Law Firm orders," *id*. (referring to RFPs 8, 14); and, (3) "*internal White House communications*" regarding those orders and agreements. *Id.* at 2, 15 (referring to RFPs 9-13, 16 (emphasis added)).

None of those discovery requests pass constitutional muster. That is so for two basic reasons. First, Plaintiff has plainly failed to meet its burden to exhaust other sources of discovery before this Court may put White House officials to the burden of either responding to the requests for production or formally asserting executive privilege. *See Cheney*, 542 U.S. at 383, 388. Second, Plaintiff's requests are improperly overbroad because they seek "everything under the sky." *Id*. at 387-88. Conducting a search for the requested materials would be burdensome enough, but the burden would be compounded where, as here, responsive documents would likely fall within the ambit of one or more components of executive privilege, such as the Presidential Communications Privilege, Attorney-Client Privilege, or Deliberative Process Privilege. Such intrusions and burdens of civil discovery, if imposed on the White House, would not only disrupt the functioning of the Executive Branch, but also raise substantial separation-of-powers concerns by involving the Court in "the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives." *Id.* at 389. This Court should deny Plaintiff's motion.

**A.** **Plaintiffs Must Pursue Available Alternative Sources of Discovery Before Seeking Discovery from the White House.**

According to Plaintiff, RFPs 1-7 and 15 "seek communications and documents exchanged with third parties outside the White House, including representatives of targeted law firms, other private non/governmental citizens . . . , and social media organizations." ECF No. 61 at 11. Likewise, Plaintiff explains that RFPs 8 and 14 "target documents that should be in the possession of both the White House and other Defendants." *Id*. at 18.

But there are obvious alternative sources of the requested information on the face of the RFPs that Plaintiff should exhaust before propounding its discovery requests on the White House. *See Karnoski v. Trump*, 926 F.3d 1180, 1205 (9th Cir. 2019) (holding that under *Cheney*, in order for the plaintiffs to seek White House discovery, they "must make a preliminary showing of need" and further demonstrate that the evidence "is not available with due diligence elsewhere."); *see also Wagafe v. Trump*, No. C17-94 RAJ, 2017 WL 5990134, at *3 (W.D. Wash. Oct. 19, 2017) ("[I]ntruding on the Executive in this context is a matter of last resort." (citing *Cheney*, 542 U.S. 367)). Discovery on the White House, therefore, is premature until Plaintiff explores alternative sources for this information.

These alternative sources include its own members, the targeted law firms (RFPs 1-2), the "social media organizations" (RFP 15), and other agency Defendants (RFPs 8, 14). Although Defendants do not concede that discovery is appropriate, Plaintiff must at least start there, including its own counsel's files, and exhaust other sources of non-privileged discovery before this Court may put the Executive to the burden of either responding to the request for productions or formally asserting executive privilege. *See Cheney*, 542 U.S. at 390 ("there is sound precedent . . . for district courts to explore other avenues, short of forcing the Executive to invoke privilege, when they are asked to enforce against the Executive Branch unnecessarily broad subpoenas.").

6

Allowing Plaintiff to propound discovery on the White House for information that could be obtained elsewhere, such as Plaintiff's own members or the law firms at issue, calls for this Court "to interfere in an intrusive way with sensitive functions of the Executive Branch." *Ziglar v. Abbasi*, 582 U.S. 120, 141 (2017).

Indeed, the parties are already exploring alternative avenues to obtain the same information outside of White House discovery, thereby mitigating the intrusive burdens on the Executive and obviating the instant motion to compel a response as to some of these RFPs.

First, in connection with RFPs 8 and 14, Plaintiff now appears to be "willing to obtain responsive documents from other Defendants" rather than the White House. ECF No. 61 at 18-19. And for good reason: Plaintiff has already sought largely the same information within the same first set of RFPs from the other agency Defendants. RFP 8 requests "[a]ll records created on or after January 20, 2025 related to the terms of the Administration's Agreements with any Settling Firm, including all communications between or among the White House, the Office of Management and Budget ('OMB'), the EEOC, and/or the U.S. Department of Justice ('DOJ'), concerning the Agreements or terms thereof." ECF No. 61-1 at 15. That document request mirrors RFPs 18, 20, and 23 that are directed to Defendants OMB, DOJ, and EEOC, respectively. Likewise, RFP 14 calls for "[a]ll documents and communications exchanged with Agency Defendants relating to the implementation, interpretation, and/or enforcement of any Law Firm Order." *Id.* at 16. That is information that Plaintiff can request from the agency Defendants without burdening the White House. Thus, Plaintiff should exhaust discovery on the agency Defendants before seeking to compel discovery on the White House.

Notwithstanding their apparent willingness to obviate White House discovery as to RFPs 8 and 14, Plaintiff introduces new errors by essentially posing two interrogatories in the course of

briefing on their motion.   Plaintiff seeks relief from this Court directing Defendants to (1) "[c]onfirm within 5 days of the date of this Order that documents responsive to Requests 8 and 14 are fully available from other Defendants in this case" and (2) that those documents "will be produced by those Defendants." Proposed Order at 2, ECF No. 61-5; *see* ECF No. 61 at 18-20. These tacked-on requests are improper. For starters, Plaintiff's new ask—particularly on this accelerated timeframe—is unduly burdensome and inconsistent with the Federal Rules. Fed. R. Civ. P. 33(b)(2). And, Plaintiff appears to call on the Government to "actually produce those responsive documents and not withhold them on the basis of some purported privilege or immunity," ECF No. 61 at 19, even where any number of privileges or other discovery objections may apply to warrant withholding. There is no basis to require Defendants to waive any privileges at this juncture.

Plaintiff is simply wrong, as well as premature, in asserting that the documents that they seek "do not implicate the presidential communications privilege in the first place" on the basis of their contention that the documents were sent "beyond the circle of 'close presidential advisors' to whom the presidential communications privilege attaches[.]" *Id.* To the contrary, the D.C. Circuit has held that the presidential communications privilege protects not only communications directly involving and documents actually viewed by the President, but also "documents 'solicited and received' by the President or his 'immediate White House advisers,'" regardless of their source. *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). And "[c]ourts in this district have also found that the privilege extends to internal agency documents that memorialize privileged communications between the agency and President or immediate White House advisers." *Prop. of the People, Inc. v. OMB*, 330 F. Supp. 3d 373, 387 (D.D.C. 2018).

8

Moreover, even setting aside the Presidential Communications Privilege, "[t]he most frequent form of executive privilege raised in the judicial arena is the deliberative process privilege; it allows the government to withhold documents and other materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d at 737. Plaintiff articulates no compelling basis to categorically wipe away all potential privilege claims that the agency Defendants may make with respect to documents responsive to RFPs 8 and 14.

Second, Plaintiff cannot compel the White House to answer RFPs 1 and 2, which seek White House "communications with different third-party sources: Law Firms." ECF No. 61 at 12. Similarly, RFP 7 calls for "[a]ll Agreements . . . between the Administration and any Settling Firm." *Id*. at 14. But, as Plaintiff alleges in its Complaint, it "counts lawyers from every AmLaw 100 firm among its membership." Compl. ¶ 20. Under *Cheney*, the separation of powers requires Plaintiff to seek this information from its own members, or the law firms at issue, rather than going directly to the White House. *See* 542 U.S. at 389-90. In fact, in keeping with *Cheney*, Defendants have now subpoenaed each of these law firms to obtain the documents that Plaintiff has requested. Ex. 1. And to the extent, as Plaintiff has suggested, these requested communications or agreements are "not memorialized in a single document," or any document at all, *see, e.g.*, ECF No. 61 at 14, Defendants have also subpoenaed the deposition testimony of the managing partners of these firms. Ex. 1. Defendants' efforts, therefore, avert any "collision course" between the branches and obviate Plaintiff's motion to compel discovery responses for RFPs 1, 2, and 7.

Plaintiff wholly denies that the separation of powers requires it to exhaust other sources for the requested information before it could seek discovery on the White House. ECF No. 61 at 5-10. It argues that "*Cheney* did *not* hold that separation-of-powers concerns arise any time a plaintiff

9

seeks any information from the White House, even if such request does not implicate a plausible claim of privilege." *Id*. at 6. Plaintiff is wrong. Initially, Plaintiff places the cart before the horse by asserting that Defendants' objections must "implicate a plausible claim of privilege." *Id*. *Cheney*, however, explicitly rejected that approach, noting that the lower court had "labored under the mistaken assumption that the assertion of executive privilege is a necessary precondition to the Government's separation-of-powers objections." 542 U.S. at 391. Plaintiff further protests, pointing out that that its proposed approach is consistent with *In re Sealed Case*. ECF No. 61 at 5 (citing 121 F.3d at 754). But the portion of that decision Plaintiff cites involved production of a single document over which the court held President Clinton's assertion of executive privilege had been waived. *In re Sealed Case*, 121 F.3d at 742, 744 n.16. *In re Sealed Case* simply did not address the threshold separation of powers concerns raised by civil discovery requests to the White House even before the need to consider privilege.

Plaintiff's reading of *In re Sealed Case* also cannot be reconciled with *Cheney*, which is a later decided decision by a higher court. Indeed, the Ninth Circuit, evaluated this exact argument in vacating a district court's discovery order that explicitly relied on the approach of *In re Sealed Case*. *Karnoski*, 926 F.3d at 1205. The Ninth Circuit rejected that approach "in light of the Supreme Court's subsequent opinion in *Cheney*," explaining that a plaintiff must, instead, "make a preliminary showing of need demonstrating 'that the evidence sought [is] directly relevant to issues that are expected to be central to the trial' and 'is not available with due diligence elsewhere.'" *Id*.

Plaintiff's argument is further contradicted by *Trump v. Mazars USA*, a more recent decision in which the Supreme Court extended *Cheney*'s teachings about the separation of powers to congressional subpoenas for the President's personal information. *See* 591 U.S. 848, 869-70

10

(2020) (citing *Cheney*, 542 U.S. at 389-90); *id*. at 869 ("Congressional subpoenas for the President's personal information implicate weighty concerns regarding the separation of powers."). There, Congress issued "four subpoenas seeking information about the finances of President Donald J. Trump, his children, and affiliated businesses." *Id*. at 853. Notably, as the Supreme Court observed, "[t]he President did not . . . resist the subpoenas by arguing that any of the requested records were protected by executive privilege." *Id*. at 857. But, nonetheless, even in "cases involving nonprivileged, private information, which by definition does not implicate sensitive Executive Branch deliberations[,]" *id*. at 864, the Supreme Court underscored that "interbranch conflict . . . does not vanish simply because the subpoenas seek personal papers or because the President is sued in his personal capacity," *id*. at 868. Accordingly, just as in *Cheney*, when "coequal branches of the Government are set on a collision course[,]" 542 U.S. at 389, "Congress [too] may not rely on the President's information if other sources could reasonably provide Congress the information it needs . . ." *Trump*, 591 U.S. at 869-70. Thus, the separation of powers concerns articulated in *Cheney* are no less palpable "even if," as Plaintiff would have it, "such a request does not implicate a plausible claim of privilege." ECF No. 61 at 6.

In any event, Plaintiff's argument would fail on its own terms, as its broad discovery requests for information related to the President's decision-making processes plainly would implicate a host of materials protected by privilege, as discussed above. Burdening the White House and the President to search for, review, and determine whether to assert privilege over these materials when other sources can provide relevant information is precisely what *Cheney* commanded that lower courts may not do.

11

### B.    The ABA's Document Requests are Fatally Overbroad and Unduly Burdensome.

Plaintiff claims to seek "a limited number of internal White House communications and documents" concerning a purported policy of issuing EOs to law firms. ECF No. 61 at 15. It tries to justify the intrusion into the White House by asserting that "[e]ach of these requests is narrowly tailored to the core factual dispute of this case" and further blames the Government for its "refusal to engage in any proposed narrowing . . ." *Id*. But "[a] party's need for information is only one facet of the problem." *Cheney*, 542 U.S. at 385. And Plaintiff here essentially ignores the "important factor weighing in the opposite direction," which "is the burden imposed by the discovery orders." *Id*. After all, "[t]his is not a routine discovery dispute." *Id*. And not only has Plaintiff issued numerous document requests specifically to the White House—more than any other Defendant in this first set of RFPs—the RFPs are invasive as they facially solicit information about the innermost deliberative processes of the President and his advisors.

To be clear, all of Plaintiff's RFPs put the White House to the substantial and constitutionally intrusive burden of searching for responsive documents on an oppressive timeframe. *See* ECF No. 61-5. But RFPs 9-13 and 16 go even further. As demonstrated with more particularity below, those RFPs seek information that is likely privileged—indeed, almost by definition—under either the Presidential Communications Privilege or Deliberative Process Privilege. The likelihood that the Government may have to raise executive privilege on behalf of the White House, thereby setting the Executive and Judicial Branches on a course for "constitutional confrontation," is a reason to *deny* Plaintiff's motion to compel thereby avoiding the "collision course," not to *grant* it. *Id.* at 387-89 (finding "no support for the proposition that the Executive Branch shall bear the burden of invoking executive privilege with sufficient specificity and of making particularized objections"). And discovery is permitted only as to "any

12

*nonprivileged matter* that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 34–35 (D.D.C. 2012) ("KBR should not be allowed to engage in a fishing expedition, requiring the United States to produce vast amounts of potentially sensitive information with little chance of obtaining relevant, admissible evidence."). Because Plaintiff's requests seek information directly from the White House, it is their burden to show that discovery is not only necessary, but proper, and consistent with all applicable privileges. *See Cheney*, 542 U.S. at 388–89; *see id.* at 388 (the Executive Branch should not have to "bear the burden" of invoking privilege to whittle down an otherwise broad request for discovery). What is plain from Plaintiff's motion is that they have not even *attempted* to make that showing.

More specifically, Plaintiff's expansive requests are strikingly similar to the "everything under the sky" requests in *Cheney* and may even go beyond them. *See* 542 U.S. at 385, 387.

RFP 9 seeks "[a]ll records created on or after January 20, 2025, related to the issuance of any Law Firm Order." It is difficult to see how RFP 9 is any different from the "unbounded" requests evaluated in *Cheney*, such as one that sought "All documents concerning any communication relating to the activities of the Task Force, the activities of any Sub–Groups, or the preparation of the Report." *Cheney*, 542 U.S. at 387. Plaintiff claims that its document requests are "narrowly tailored to the core factual dispute of this case," which concerns a purported policy of issuing EOs to law firms. ECF No. 61 at 15. But this request on its face is not limited merely to a discrete handful of documents considered by the President and his advisors to the purported policy. *See* Compl. ¶ 4. RFP 9 clearly goes much further than that by requesting *all* records *related* to the issuance of *any* of the Executive Orders. That mismatch shows that the request is not narrowly tailored.

Plaintiff's proposed attempt to further "narrow" RFP 9 fares no better. Plaintiff proposes to modify RFP 9 to request: (1) all drafts of Law Firm Orders, including any redlines, edits, and comments thereto, however communicated, and including communications transmitting such drafts, redlines, edits, and comments; (2) emails that refer to any of the firms who received a Law Firm Order and the word "EO" (or other synonyms used to refer to an Executive Order); (3) all memoranda related to the issuance or prospective issuance of Law Firm Orders, including drafts thereof and communications transmitting and responding to such memoranda; (4) all notes from meetings at which the issuance of any Law Firm Orders was discussed. ECF No. 61 at 16. But Plaintiff fails to explain how this new version targets the existence of a policy. Nor is this new version meaningfully narrower. Instead, it just breaks down the components of RFP 9 into four subparts. Although Plaintiff blithely asserts that the "narrowed version of the Request eliminates any possibility that the Government will be forced to collect, review, and log an overwhelming number of documents," it admits that RFP 10 "may be largely duplicative of the now-narrowed Request No. 9." ECF No. 61 at 16. Thus, the resulting pool of potentially responsive materials remains expansive, which will similarly "require the Executive Branch to bear the onus of" analyzing potential ambiguities or privilege issues "line by line." *Cheney*, 542 U.S. at 388. For example, the revised RFP 9 would require the White House to produce or log privilege claims as to "all notes"—from some unidentified individuals—taken during some "meeting"—that Plaintiff does not elaborate on—in which the EOs might have been mentioned.

And not only would RFP 9 still be unduly burdensome in terms of the effort required to search and review materials, it also—very explicitly—goes directly to the privilege issues. "All memoranda related to the issuance or prospective issuance of Law Firm Orders," ECF No. 61 at 16, is squarely covered by the Presidential Communications Privilege, which is a "presumptive

privilege for [p]residential communications, [and] preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." *Loving*, 550 F.3d at 37. Simply put, a plaintiff cannot demand—especially in the expansive fashion that Plaintiff does here—all of the paper prepared by all of the President's advisors with respect to the Executive Orders. *In re Sealed Case*, 121 F.3d at 754. Likewise, the request for "all drafts of Law Firm Orders," including redlines, edits, and comments, ECF No. 61 at 16, is definitionally also in the heartland of the Deliberative Process Privilege, which "protects documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving*, 550 F.3d at 38.

Turning to RFPs 10, 11, and 12, Plaintiff claims they "are already narrow by virtue of the fact that they are '[d]ocuments sufficient to . . .' requests." ECF No. 61 at 16. But that qualifier does not meaningfully narrow the document requests. Nor does it "describe with reasonable particularity" what is being requested. Fed. R. Civ. P. 34(b)(1)(A). Instead, it introduces vagueness. And, more fundamentally, these requests still improperly "require the Executive Branch to bear the onus of critiquing the unacceptable discovery requests line by line." *Cheney*, 542 U.S. at 388.

Specifically, RFP 10—which requests "Documents sufficient to show all facts considered and information relied on in issuing any Law Firm Order"—plainly implicates information protected by the Presidential Communications Privilege. *See Loving*, 550 F.3d at 37 (explaining that Presidential Communications Privilege covers "documents 'solicited and received' by the President or his 'immediate White House advisers [with] ... broad and significant responsibility for investigating and formulating the advice to be given to the President.'"). It also "may be largely duplicative of the now-narrowed" RFP 9, ECF No. 61 at 16, which is yet another reason to deny

15

the motion to compel as to this RFP. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring courts to limit discovery that is "unreasonably cumulative or duplicative").

RFPs 11 and 12 seek "[d]ocuments sufficient to identify" (1) "all individuals who participated in the drafting, editing, publishing, review, or approval of Law Firm Orders, including who first proposed the idea . . ." and (2) "the members of 'President Trump's policy team' who are involved in 'executing on his directive to hold Big Law accountable . . .'" Initially, Plaintiff asserts that these requests "are among the narrowest and least burdensome categories of document requests because they can be fulfilled with minimal production." ECF No. 61 at 17. But identifying individuals through the production of documents is inherently overbroad because it necessarily entails supplying extraneous information beyond the requested identifications themselves. Indeed, the "everything under the sky" requests at issue in *Cheney* included requests for documents to identify individuals in connection with the President's task force. *See* 542 U.S. at 387. Moreover, RFPs 11 and 12 also implicate the separation of powers because revealing the identity of whom the President consults could provide insight into the nature of the advice solicited and received. *See, e.g.*, *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 217 (D.C. Cir. 2013) (Garland, C.J.) (construing FOIA to exempt White House visitor logs "to avoid the significant separation-of-powers concerns that would arise if the Act were construed in a way that effectively permitted requesters to reconstruct" White House visitors and meetings); *Prop. of the People v. OMB*, 394 F. Supp. 3d 39, 47 (D.D.C. 2019) (access to White House calendars "would raise separation-of-powers concerns because it would threaten the ability of the President and his closest advisers to hold meetings and seek advice in confidence"). Furthermore, revealing the identity of whom the President consulted could chill participation in future deliberations, undermining the President's

16

access to the best advice and therefore undermining the quality of presidential decision-making. *See Nixon*, 418 U.S. at 705; *In re Sealed Case*, 121 F.3d at 751.

RFP 13 seeks "[d]ocuments of 'President Trump's policy team' relating to 'executing on [President Trump's] directive to hold Big Law accountable . . ." Perhaps recognizing the overbreadth of that request, Plaintiff offers to narrow RFP 13 to cover: "(1) all memoranda related to President Trump's directive . . ."; "(2) emails that refer to or discuss the President's directive"; and "(3) all notes from meetings at which the directive was discussed." ECF No. 61 at 18. But this revised request has all the same problems as the new version of RFP 9 in that it improperly seeks "everything under the sky." *Cheney*, 542 U.S. at 388. Given the broad scope of the categories within this request, the Executive Branch should not have to "bear the burden of invoking executive privilege with sufficient specificity and of making particularized objections." *Id*.

RFP 15 requests "Social media posts, and any direct messages, discussing or relating to any Law Firm Order or Agreement." Plaintiff offers to narrow this request by only limiting the custodians. ECF No. 61 at 14-15. But this is an "unacceptable discovery request[]" because, not only is it not narrowly tailored to the "core factual dispute of this case," *id*., at 15, it is ambiguous and vague, which—in turn—creates undue burdens for the Executive, particularly if this Court grants Plaintiff's motion to compel production of the requested materials. *Cheney*, 542 U.S. at 388. Plaintiff does not define "[s]ocial media posts" or "direct messages." It also does not specify any particular social media platform. More importantly, Plaintiff fails to clarify whether it seeks "posts" or "direct messages" from official government social media accounts or the personal accounts of certain individuals. Defendants do not have "possession, custody, or control" over the

latter materials. *See* Fed. R. Civ. P. 34(a)(1).[3] RFP 15 also flunks *Cheney* to the extent there are alternative "avenues" for the requested material. *See* 542 U.S. at 390.

Finally, RFP 16 asks for "[n]otes and communications related to any public statements, press release, signing ceremony, and/or media press interview related to any Law Firm Order or Agreement . . ." Plaintiff further proposes to "narrow this request . . . to cover only those public statements identified in the Complaint or cross-referenced in the RFP." ECF No. 61 at 18. But, again, the Supreme Court has already held that the burden of having to comb through such sensitive documents—internal White House documents relating to purported statements by the President and other advisors—"line by line" for privilege assertions and objections, potentially raising the prospect of constitutional confrontation, is itself a burden that the White House should not bear absent extraordinary circumstances. *See Cheney*, 542 U.S. at 388.

Taking a step back, it should be emphasized again that, under *Cheney*, it is *not* the White House that "shall bear the burden" of showing that a discovery request is too broad. Instead, there is an effective presumption against White House discovery, which a plaintiff must displace through a particularized showing. *Id*. at 388; *cf. Karnoski*, 926 F.3d at 1205 ("But while Defendants' tactics in opposing discovery may have been unhelpful, they did not absolve the district court from 'explor[ing] other avenues, short of forcing the Executive to invoke privilege.'"). Indeed, the need to "winnow the discovery orders by asserting specific claims of privilege and making more

---

[3] Plaintiff's invocation of *Missouri v. Biden*, *see* ECF No. 61 at 14-15, further muddies the waters. That case concerned allegations that the Government "colluded with and/or coerced social media companies to suppress disfavored speakers, viewpoints, and content on social media." No. 22-cv-1213, 2022 WL 4086539, at *1 (W.D. La. Sep. 6, 2022). But the waiver Plaintiff alludes to was over external communications with the social media *companies*, not any "posts" or "direct messages." *Id.* at *3-4.

particular objections" is itself a burden on the Executive Branch that raises constitutional concerns. *Cheney*, 542 U.S. at 389. Plaintiff has attempted to throw open the White House's files and require a thorough examination of every scrap of paper having anything to do with the cited Executive Orders. *Cheney* does not permit that approach.

**II.    THIS COURT SHOULD STAY ANY ORDER AUTHORIZING WHITE HOUSE DISCOVERY TO ALLOW DEFENDANTS TO PURSUE APPELLATE OPTIONS.**

To the extent this Court agrees with Plaintiff and orders discovery on the White House, this Court should stay any order to give Defendants time to exhaust its appellate options, including moving for an interlocutory appeal of this Court's decision denying Defendants' motion to dismiss, ECF No. 43, under 28 U.S.C. § 1292(b). *See In re United States*, 583 U.S. 29, 32 (2017). As Plaintiff's discovery requests make plain, this is a fishing expedition for a jurisdictional basis for this lawsuit. The standards set forth in *Cheney* and Section 1292(b) both support an immediate interlocutory appeal before White House discovery can go forward. *See id*.

**CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiff's motion to compel.

Dated: July 17, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
DIANE KELLEHER
Directors, Federal Programs Branch

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

CHRISTOPHER M. LYNCH
JAMES R. POWERS
Chief Litigation Counsel, Federal Programs Branch

19

*/s/ James J. Wen*
MICHAEL VELCHIK,
Senior Counsel, Civil Division
JAMES J. WEN (NY Bar No. 5422126)
M. JARED LITTMAN
ADAM S. FOX
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-8185
Email: james.j.wen@usdoj.gov
*Attorneys for Defendants*

20

**CERTIFICATION OF SERVICE**

I hereby certify that, on July 17, 2026, this memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *James J. Wen*
JAMES J. WEN