UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN BAR ASSOCIATION,

    *Plaintiff,*

    v.

EXECUTIVE OFFICE OF THE PRESIDENT,
et al.,

    *Defendants.*

Civil Case No. 1:25-cv-01888-AHA

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL GOVERNMENT
RESPONSE TO ABA'S REQUESTS FOR PRODUCTION NOS. 1-16**

## TABLE OF CONTENTS

I.    *Cheney* does not exempt the White House from producing documents exchanged with third parties. ................................................................................... 2

II.    The ABA's requests are narrowly tailored to seek discovery central to its claims. ......................................................................................................... 5

III.    The Court should allow this case to proceed without delay. ............................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)............................................................................................... *passim*

*Clinton v. Jones*,
520 U.S. 681 (1997)...........................................................................................................2

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*,
827 F.3d 145 (D.C. Cir. 2016) ..........................................................................................9

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) .............................................................................4, 6, 7, 8

*In re Subpoenas on Boris Epshteyn*,
ECF No. 1, 26-mc-333 (S.D.N.Y.) ................................................................................4, 5

*In re United States*,
583 U.S. 29 (2017)...........................................................................................................10

*Judicial Watch, Inc. v. U.S. Secret Service*,
726 F.3d 208 (D.C. Cir. 2013) ..........................................................................................8

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ..........................................................................................3

*Loving v. Department of Defense*,
550 F.3d 32 (D.C. Cir. 2008)............................................................................................7

*Miramontes v. Peraton Inc.*,
2023 WL 3855603 (N.D. Tex. June 6, 2023) ...................................................................9

*Property of the People v. OMB*,
394 F. Supp. 3d 39 (D.D.C. 2019)....................................................................................8

*Protect Democracy Project, Inc. v. Nat'l Sec. Agency*,
10 F.4th 879 (D.C. Cir. 2021)........................................................................................2, 8

*Trump v. Mazars*,
591 U.S. 848 (2020)...........................................................................................................4

*United States v. Nixon*,
418 U.S. 683 (1974)......................................................................................................4, 8

ii

*Wagafe v. Trump,*
2017 WL 5990134 (W.D. Wash. 2017) .................................................................................3

The ABA has served targeted document requests on the Government and has further narrowed those requests to avoid any possible overbreadth concerns. The Court should compel the Government to respond in full. Nothing in the Government's opposition counsels a different result.

The Government's contrary argument rests on several fundamentally incorrect assertions. First, the Government asserts an "exhaustion" requirement that finds no basis in the law. None of the cases the Government cites requires a party seeking discovery from the Executive to exhaust alternative avenues of discovery before the Government even identifies the responsive documents to which a privilege might attach. Such an approach would lead to the illogical and inefficient result that has already occurred in this case—where the Government is refusing to produce third-party communications from its own files and is instead subpoenaing those third parties to produce the documents back to the ABA, while at the same time moving to quash the third party subpoena the ABA has served seeking many of those exact same communications (arguing that Plaintiff should have exhausted other sources of discovery first).

Second, the Government turns *Cheney* on its head, arguing that the ABA must make a threshold showing overcoming any potential privilege at the outset, before the Government formally responds to the discovery requests at issue. *See, e.g.*, Resp. at 12 (arguing plaintiff must show that any requested discovery is "consistent with all applicable privileges"). Such a rule would require the Court to decide privilege issues in the first instance, which is exactly what *Cheney* seeks to avoid. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 389-90 (2004) (the constitutional confrontation that arises from an assertion of executive privilege "should be avoided whenever possible"). And to the extent the Government means to argue that the potential application of privilege is itself sufficient grounds to deny the ABA's motion to compel, that fails: "[l]ike the deliberative process privilege, the presidential

1

communications privilege is qualified, not absolute." *Protect Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 886 (D.C. Cir. 2021). The Government must respond to the ABA's narrow requests, and if it believes a privilege applies to any responsive documents it must log them and afford the ABA an opportunity to challenge the privilege, as appropriate.

Third, the Government seems to take the position that *any* White House review of documents at all constitutes an undue burden. It repeatedly objects to targeted requests as requiring the Government to review or "comb through" documents in response, without providing any further explanation or information regarding its purported burden. Resp. at 11, 14, 18. *All* requests for production will require looking for at least some documents—and the Executive is not immune from civil discovery. *See, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 687-88, 710 (1997) (affirming order allowing civil discovery and trial to proceed against a sitting president). In short, the Court should grant the ABA's motion to compel a full response to its targeted document requests.

## I.    *Cheney* does not exempt the White House from producing documents exchanged with third parties.

The Government's argument that it has no obligation to produce responsive, nonprivileged documents—specifically, communications with third parties—until the ABA exhausts any other possible source of those documents has no support in the governing caselaw and leads to an absurd result.

First, the Government concedes that its purported "exhaustion" requirement applies only to RFPs 1-8 and 14-15 (seeking communications with third parties). Resp. at 6. The Government's opposition repeatedly makes clear that the Government's objection to these requests is not based on a privilege assertion, but rather an inchoate and unsubstantiated burden objection. *See, e.g.*, Resp. at 5 ("Conducting a search for the requested materials would be burdensome enough . . . ."); *id.* at 6 (the ABA must "exhaust other sources of non-privileged discovery before this Court may

2

put the Executive to the burden of *either* responding to the request for productions *or* formally asserting executive privilege"). In other words, the Government's position is that it should not even have to search for relevant communications, whether or not there is a colorable privilege concern. At most, the Government speculates that there might be some documents covered by the deliberative process privilege within the communications with third parties. Resp. at 8. If that is the case—and it is unlikely, given the narrow interpretation courts have given the individuals to whom the deliberative process privilege can attach—the appropriate path is for the Government to identify which documents might actually be privileged and to serve a privilege log compliant with Federal Rule of Civil Procedure 26(b)(5)(A). It is not for the Government to claim privilege over *all* possible responsive communications to avoid having to search for and collect them. All the more so because the deliberative process privilege can be overcome by a sufficient finding of relevance and need. *See Karnoski v. Trump*, 926 F.3d 1180, 1196 (9th Cir. 2019).

Second, the cases the Government invokes for its exhaustion argument impose no such requirement. In the cases on which it relies, the executive branch had already identified and asserted an executive privilege over the documents in question (or been ordered to do so). *See Karnoski*, 926 F.3d at 1195 (government had produced a number of privilege logs and asserted deliberative process privilege over 15,000 documents); *Wagafe v. Trump*, 2017 WL 5990134, at *3 (W.D. Wash. 2017) (government defendants ordered to identify specific discovery over which it asserted privilege and identify alternative custodians and non-custodial sources of information). *Cheney* nowhere states that exhaustion is required before the privilege is invoked. Rather, *Cheney* suggested the opposite, by emphasizing that trial courts have discretion in balancing the competing concerns implicated by potential executive privilege and that one potential solution is to narrow document requests and then allow the Executive to consider whether to invoke privilege—with no

3

mention of exhaustion first. *Cheney*, 542 U.S. at 390.[1] *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) is in accord: There, the court discussed the need for exhaustion only in the context of determining whether a privilege assertion should be overcome—not whether the Executive should be required to make a privilege assertion at all. *Id.* at 302.

Third, the Government's argument leads to an absurd outcome that has already come to pass in this very case. If the Government has its way, a party seeking relevant documents from the Executive must subpoena third parties for those same documents even where the Government has no plausible basis to assert privilege over them. This will lead to unnecessary expense, delay, and burden on the courts' resources: rather than seek discovery from a party to the case, plaintiffs would be forced to issue and potentially litigate multiple subpoenas, potentially in other courts, potentially with parties who have not preserved documents. Such a result is flatly inconsistent with the Supreme Court's admonition that executive privilege only goes so far as is "consistent with the fair administration of justice." *United States v. Nixon*, 418 U.S. 683, 715 (1974).

This case demonstrates the absurdity. Rather than produce any indisputably nonprivileged communications with third-party law firms that are in its possession, the White House has subpoenaed over a dozen law firms for the purpose of receiving *those same communications* and then turning around and *producing them to the ABA*. *See* Resp. at 9. This is a huge waste of time (and resources) for everyone involved. On the other hand, when the ABA did issue a subpoena to third party Boris Epshteyn (who is not a government official) seeking, among other things, relevant communications with the Administration, the Government moved to quash that subpoena. *See In re Subpoenas on Boris Epshteyn*, ECF No. 1, 26-mc-333 (S.D.N.Y.). In that motion, the

---

[1] The Government also perplexingly relies on *Trump v. Mazars*, 591 U.S. 848 (2020), which likewise did not impose an exhaustion requirement and involved the "distinctive aspect" of potential conflict between the legislative and executive branches—not a concern here, *id.* at 854.

4

Government contends that the subpoenas should be quashed because the ABA must first "exhaust alternative sources of non-privileged discovery" from *other* third parties. *Id.* at 10. Under the Government's position, then, the ABA would *never* be entitled to so much as a privilege log identifying the documents that are supposedly cloaked in executive privilege—which, again, can be overcome (if it even applies—the Government has yet to explain how the privilege would attach to communications between Epshteyn and law firms). The Government is seeking to avoid its discovery obligations not in a good-faith assertion of executive privileges, but so that its documents related to the Law Firm Intimidation Policy never see the light of day.

As for RFPs 8 and 14, the Government does not cogently explain why it cannot represent that the federal agencies—represented by the same counsel—can confirm that they have retained responsive documents and will produce them. Resp. at 7-8. To the extent the Government asserts that some documents are protected by a relevant privilege, then the Government must produce a sufficiently detailed privilege log that complies with the Federal Rules of Civil Procedure.

## II.     The ABA's requests are narrowly tailored to seek discovery central to its claims.

As set forth in the ABA's motion, each of the at-issue requests is narrowly tailored to seek discovery relevant to the core issue in this case—the existence of the Law Firm Intimidation Policy. The ABA has further narrowed certain of those requests so they are no broader than absolutely necessary. Mot. at 15. The Government should be compelled to respond to these requests, including those to which some privilege might hypothetically apply (RFPs 9-13 and 16).[2]

**Request 9** seeks, in its narrowed form, specified drafts, emails, memoranda, and meeting notes created on or after January 20, 2025, related to the issuance of any Law Firm Order. Mot. at

---

[2] The Government includes Request 15 with these requests, and the ABA therefore addresses it with these requests on reply. However, as explained in the ABA's motion, the Government has waived any privilege as to communications responsive to Request 15 because they were exchanged with individuals outside the White House. Mot. at 14-15.

16. The Government does not explain how this request, enumerating the specific documents sought by the ABA for a limited timeframe, could or should be further narrowed. Resp. at 14. Nor does it provide any information regarding its purported burden of responding, beyond claiming that the responsive material is "excessive" and that the Government will have to consider "privilege issues 'line by line.'" *Id.* (quoting *Cheney*, 542 U.S. at 388). The Government takes *Cheney*'s reference to "line by line" review out of context: the Supreme Court's concern about meticulous review was in reference to "critiquing [ ] *unacceptable discovery requests* line by line," not reviewing documents (as is generally necessary to produce any document in discovery). *Cheney*, 542 U.S. at 388 (emphasis added). More to the point, this request seeks the documents most pertinent to the ABA's claims and targets specific categories known to exist. *See* Mot. at 16. It is precisely the sort of targeted request *Cheney* contemplates, and to which the Government must respond with production or an assertion of privilege.

The Government tries to short-circuit this process, arguing that the request is overbroad *because* it believes responsive documents will be privileged. Resp. at 14-15. But the possible application of privilege does not relieve the Government of its obligation to respond to a properly tailored request. *See Cheney*, 542 U.S. at 390. Rather, the Government must assert its claim via a privilege log and, if necessary, the parties may brief whether the privilege applies and, if so, whether it has been overcome. *See, e.g., In re Sealed Case*, 121 F.3d at 735 (in response to subpoena, "White House produced a privilege log identifying the date, author, and recipient of each document withheld" and "the nature of each document and the basis for the privilege").

Neither of the Government's cited cases calls for a different course. On the contrary, the court in *In re Sealed Case* held that the party seeking discovery had "demonstrated sufficient need in order to overcome the presidential communications privilege" in regard to certain documents,

6

and that it "should be given an opportunity to make out a sufficient showing of need in regard to other evidence more generally"—the same opportunity the ABA seeks here. 121 F.3d at 762. And while the Government relies on *Loving v. Department of Defense*, 550 F.3d 32 (D.C. Cir. 2008), to argue that documents sought by Request 9 are supposedly in the "heartland of the Deliberative Process Privilege," that case confirms that the deliberative process privilege is neither absolute nor does it "protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Id*. at 38. The possible application of a privilege does not eliminate the Government's obligation to respond to targeted discovery.

**Request 10** seeks documents "sufficient to show all facts considered and information relied on in issuing any Law Firm Order," to the extent not captured by production in response to Request 9. Mot. at 16-17. The Government inexplicably (and for the first time) claims that the "documents sufficient to show" limiter does not narrow the discovery sought but instead "introduces vagueness." Resp. at 15; *see* ECF 61-3 (email record of conferral). The Government does not explain its confusion, though the ABA is happy to confer to dispel any. The Government's additional concerns regarding Request 10 are that it (1) overlaps with Request 9, and (2) may implicate privileged material. Resp. at 15-16. But any overlap simply narrows the documents sought by this request—the Government need only produce documents not already captured by Request 9. And with respect to the latter, again, the Government may formally assert privilege and log documents in response to this narrowly tailored request.

**Requests 11** and **12** seek documents sufficient to identify individuals involved in the drafting and implementation of the Law Firm EOs and the Policy. Mot. at 17. On their face, these are targeted asks—and the Government's appeal to caselaw does not alter that. The Government first suggests that *Cheney* found similar requests overbroad, Resp. at 16; but the requests at issue

7

in *Cheney* sought "all documents . . . referring to" various groups of individuals, 542 U.S. 387. That is vastly broader than the requests at issue here, which seek only documents sufficient to identify relevant individuals. Mot. at 16-17. The Government next argues that the ABA's request for documents identifying individuals connected to the Law Firm Intimidation Policy "implicate[s] the separation of powers because revealing the identity of whom the President consults could provide insight into the nature of the advice solicited and received," Resp. at 16—but this ignores the context of the ABA's Request. The ABA *already knows* the general topic of any consultation: the Law Firm EOs and their implementation. In this posture, the names of relevant individuals do not pose a similar concern. The Government's citations to *Judicial Watch, Inc. v. U.S. Secret Service*, 726 F.3d 208 (D.C. Cir. 2013), and *Property of the People v. OMB*, 394 F. Supp. 3d 39 (D.D.C. 2019), do not help the Government. Both are FOIA cases and thus differ from the present matter in a key respect: "In the FOIA context, once even a qualified privilege like the presidential communications privilege applies to a record . . . a need showing does not overcome it." *Protect Democracy Project*, 10 F.4th at 886. Here, by contrast, any such privilege is not absolute. *Id.*

The ABA disagrees that any privilege prevents identification of individuals associated with the drafting and implementation of the Law Firm EOs, but that question is not yet before the Court. The proper course in this non-FOIA litigation is for the Government to log responsive documents in response to the ABA's narrow request. And while the Government cites caselaw for the proposition that requiring a response to these requests may chill future Presidential consults, neither of its cited cases addressed requests seeking only the identification of individuals. *See Nixon*, 418 U.S. at 688-89; *In re Sealed Case*, 121 F.3d at 751. Indeed, in *Nixon*, "White House daily logs and appointment records" had already been produced. 418 U.S. at 688.

**Requests 13** and **16** respectively seek, as narrowed, memoranda, emails, and notes related

8

to President Trump's directive to "hold Big Law accountable for their weaponization of justice and their lies," Mot. at 17-18, and "[n]otes and communications" related to ten specific "public statements, press release[s], signing ceremony[ies], and/or media press interview[s]" cited in the Complaint and cross-referenced in the RFP, Mot. at 17-18. The Government identifies no specific problem beyond repeating that these requests ask for "everything under the sky" or require "comb[ing] through" documents. Resp. at 17-18. These objections are unfounded. *See* Mot. at 18.

**Request 15** seeks, as narrowed, "[s]ocial media posts, and any direct messages, discussing or relating to any Law Firm Order or Agreement," from no more than seven custodians. Mot. at 14-15. The Government simply ignores the point that any public-facing post or direct message with someone outside the White House is necessarily non-privileged. *See* Mot. at 14 (citing caselaw). It instead argues that the request is ambiguous for failing to define "social media post" or "direct message," but the definitions—posts or direct messages on a social media website—are self-evident. Indeed, the Government's subsequent complaint, that the ABA did not specify the particular social media platforms at issue, confirms that it understood the general request. Resp. at 17. With respect to which platforms are at issue, the Government is in the best position to determine what platforms its custodians use; but its search efforts should include at least X, Facebook, Truth Social, Bluesky, Instagram, and LinkedIn.[3]

---

[3] The issue of which accounts the Government must produce from is not before this Court. But the Government is incorrect that officials' personal accounts are categorically excluded from sources over which the Government has possession, custody, or control. *See* Resp. at 17-18. *Cf. Miramontes v. Peraton Inc.*, 2023 WL 3855603, at *4 (N.D. Tex. June 6, 2023) (collecting cases and listing factors considered to assess whether employer controls employees' personal text messages under Fed. R. Civ. P. 34); *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145, 146 (D.C. Cir. 2016) ("[A]n agency cannot shield its records from search or disclosure . . . by the expedient of storing them in a private email account controlled by the agency head.").

**III.    The Court should allow this case to proceed without delay.**

In the event the Court grants the ABA's instant motion, the Government offers no valid basis to stay that order. Resp. at 19. The issue pending before the Court is a narrow one: whether the ABA's document requests are sufficiently targeted to avoid unnecessarily implicating any privilege such that, under *Cheney*, the Government must respond. Should the Court grant the ABA's motion, the next step is for the Government to either produce responsive documents or assert an applicable privilege and provide a privilege log.

The Government's cited case, *In re United States*, 583 U.S. 29 (2017), does not support a stay here. There the district court issued an order compelling the Government to actually "turn over" various categories of documents; the Government sought to stay that order until, *inter alia*, adjudication of its motion to dismiss; the district court denied the motion; the court of appeals denied the Government's request for a writ of mandamus; and the Supreme Court vacated and remanded with the direction that "the District Court may not compel the Government to disclose any document that the Government believes is privileged without first providing the Government with the opportunity to argue the issue." *Id.* at 30-31. The ABA is not now seeking disclosure of any documents to which privilege could potentially apply. Rather, it is seeking an order compelling the Government to indicate which documents responsive to the ABA's narrow requests it believes are privileged and why—affording the parties opportunity to "argue the issue," *id.*—and to produce the balance. And while the Government makes reference to interlocutory appeal under 28 U.S.C. § 1292(b), it has not moved for such an appeal. A stay on the basis that it might do so is—in addition to being substantively unwarranted—premature.

***

For these reasons, the Court should grant the ABA's motion to compel.

Dated: July 22, 2026

10

*/s/ Stephen Shackelford*
Stephen Shackelford, Jr. (D.C. Bar #NY0443)
Beatrice Franklin (admitted *pro hac vice*)
Jillian Hewitt (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Tel.: 212-336-8330
sshackelford@susmangodfrey.com
bfranklin@susmangodfrey.com
jhewitt@susmangodfrey.com


Neal Manne (D.C. Bar #357012)
Barry Barnett*
Harry Susman (admitted *pro hac vice*)
Justin A. Nelson (D.C. Bar#490347)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
nmanne@susmangodfrey.com
bbarnett@susmangodfrey.com
hsusman@susmangodfrey.com
jnelson@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel.: 310-789-3100
dbrook@susmangodfrey.com

Jordan Connors (admitted *pro hac vice*)
Steve Seigel (D.C. Bar#D00473)
Katherine Peaslee (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, Washington 98101
Tel: 206-516-3880
jconnors@susmangodfrey.com
sseigel@susmangodfrey.com
kpeaslee@susmangodfrey.com

\**pro hac vice* forthcoming
*Attorneys for Plaintiff American Bar Association*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2026, I electronically filed the foregoing Plaintiff's Reply in Support of Motion to Compel Government Response to ABA's Requests for Production Nos. 1-16 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered participants.

/s/ Stephen Shackelford, Jr.
Stephen Shackelford, Jr.

12