**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN BAR ASSOCIATION,

    *Plaintiff,*

    v.

EXECUTIVE OFFICE OF THE PRESIDENT,
et al.,

    *Defendants.*

Civil Case No. 1:25-cv-01888-AHA

**OPPOSITION TO DEFENDANTS' MOTION TO
DISQUALIFY SUSMAN GODFREY LLP**

**TABLE OF CONTENTS**

I.     FACTUAL BACKGROUND ......................................................................................3

II.    ARGUMENT.............................................................................................................6

       A.    The Government fails to identify any individual "lawyer" to whom Rule 3.7(a) might apply....................................................................................7

       B.    Rule 3.7 is "limited to the trial stage[.]"..................................................8

       C.    There is no SG lawyer who is "likely to be a necessary witness" in any trial of this case. ......................................................................................14

III.   CONCLUSION.......................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agena v. Cleaver-Brooks, Inc.*,
No. 19-00089, 2019 WL 11248588 (D. Haw. Oct. 17, 2019), *aff'd*, 428 F.
Supp. 3d 267 (D. Haw. 2019) ...................................................................................12, 13

*Am. Bar Ass'n v. Exec. Off. of the President*,
No. 1:25-cv-01888, 2026 WL 890410 (D.D.C. Mar. 31, 2026) .................................................4

*Ambush v. Engelberg*,
282 F. Supp. 3d 58 (D.D.C. 2017) ...................................................................................2, 6, 11

*Butler v. Enter. Integration Corp.*,
459 F. Supp. 3d 78 (D.D.C. 2020) ...................................................................................11, 14, 15

*Canfield v. Stone*,
No. 93-cv-1022, 1993 WL 468451 (D.D.C. Oct. 25, 1993) ...........................................10, 11

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)........................................................................................................4

*Com. Com. Partners, LLC v. Milliken & Co.*,
No. 4:22-cv-00020, 2022 WL 17093650 (D. Utah Nov. 21, 2022)........................................12

*Council for the Nat'l Reg. of Health Serv. Providers in Psychology v. Am. Home
Assur. Co.*,
632 F. Supp. 144 (D.D.C. 1985) ......................................................................................14, 15

*Crowe v. Smith*,
151 F.3d 217 (5th Cir. 1998) ...........................................................................................10

*Doe v. Yim*,
55 Cal. App. 5th 573 (2020) ............................................................................................12

*Droste v. Julien*,
477 F.3d 1030, 1036 (8th Cir. 2007) ...............................................................................11, 12

*Fognani v. Young*,
115 P.3d 1268 (Colo. 2005) (en banc)............................................................................12

*Merchant & Gould, P.C. v. Premiere Global Servs., Inc.*,
No. 09-03144, 2010 WL 11646623 (D. Minn. Nov. 15, 2010)............................................12

*Redding v. Prosight Specialty Mgmt. Co.*,
No. CR 12–98–H–CCL, 2014 WL 12783297 (D. Mont. Feb. 3, 2014) .................................12

*In re Subpoenas on Boris Epshteyn*,
  No. 26-mc-00333 (KPF), ECF 10 ........................................................................5

*U.S. Soccer Fed'n Found., Inc. v. U.S. Soccer Fed'n, Inc.*,
  No. 18-2856 (TJK), 2019 WL 4673718 (D.D.C. Sept. 25, 2019) ...........................11

*United States v. Crowder*,
  313 F. Supp. 3d 135 (D.D.C. 2018) .........................................................10, 14, 15

*Waite, Schneider, Bayless & Chelsey Co. v. Davis*,
  253 F. Supp. 3d 997 (S.D. Ohio 2015) ...............................................................12

*World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*,
  866 F. Supp. 1297 (D. Colo. 1994)................................................................12, 13

**Rules**

D.C. Rules of Prof. Conduct 1.6 ...........................................................................8

D.C. Rules of Prof. Conduct 1.7 .....................................................................6, 7, 8

D.C. Rules of Prof. Conduct 1.9 ........................................................................6, 7

D.C. Rules of Prof. Conduct 3.7 ............................................................... *passim*

**Other Authorities**

D.C. Bar Ethics Opinion 228 .................................................................... *passim*

The Government's Motion to Disqualify ("Motion") Susman Godfrey LLP ("SG") represents a new chapter in the ongoing effort to intimidate and chill the speech of the American legal profession (the "Law Firm Intimidation Policy"). An obvious objective of that Policy is to deprive clients with interests adverse to the Administration from obtaining counsel. The Administration's initial weapon was the "Executive Order" or threat thereof. Now, the Administration is trying to weaponize the Rules of Professional Conduct to deprive the ABA of its chosen counsel.

The ABA brought this case to stop the Administration from continuing its Intimidation Policy against ABA lawyer-members who would speak for clients or causes that offend the President. It is ironic, then, that the Government now seeks to silence lawyers who speak in this case on behalf of a client and cause the President disfavors. Relying on the existence of subpoenas **that the Government itself issued**, the Government seeks to disqualify SG under the rationale that those affected by the Intimidation Policy cannot represent a client in challenging that Policy. Such reasoning would not only disqualify SG—it would disqualify any of the other firms whom the Government already targeted and indeed any other firm whom the Government might later target. It would effectively make the ABA's choice of counsel subject to the Government's veto.

The Motion is meritless. By its terms, D.C. Rule 3.7 applies only to a situation in which (1) an individual "**lawyer**" (2) acts as an "advocate **at a trial**" (3) where that same lawyer is "likely to be a **necessary witness**" (emphasis added). The Motion fails for three reasons.

*First*, D.C. Rule 3.7(a) applies to disqualification of a lawyer—not a law firm. The Motion therefore fails outright because it does not identify any lawyer who will be both advocate and witness. Instead, the Government pushes for disqualification of the entire firm. But where the Rule is invoked to prevent "possible prejudice to the opposing party, there is no reason to disqualify

1

other lawyers in the testifying lawyer's firm[.]" D.C. Rule 3.7, cmt. 5. Even if the Government had identified a particular advocate-witness (it didn't), or any resulting prejudice (it hasn't), a firm-wide bar would not apply.

*Second*, "on its face, Rule 3.7 only applies to trial counsel," and does not apply to representation "during pretrial proceedings." *Ambush v. Engelberg*, 282 F. Supp. 3d 58, 65 (D.D.C. 2017) (citing D.C. Bar Ethics Op. 228, *available at* https://www.dcbar.org/for-lawyers/legal-ethics/ethics-opinions-210-present/ethics-opinion-228). Unless and until a true and not-hypothetical Rule 3.7 conflict arises, any request for disqualification (particularly against an entire firm) is unwarranted and premature. Even if the Government had waited until the eve of trial to seek disqualification, the Motion would be meritless because the animating concern of the Rule is to prevent confusion and potential prejudice to the opposing party from a lawyer acting as both advocate and witness; numerous courts recognize that such concerns are not present where a case is tried to a judge, as this one will be. Conspicuously, Rule 3.7 exists to protect two primary interests: the client's interest in avoiding a conflict, and the opponent's interest in avoiding prejudice. *See* Rule 3.7, cmt. 1. The Government's Motion references "conflict" and "prejudice," but presents no substantive argument or explanation of how SG's representation of the ABA imperils either of those interests.

*Third*, the Rule applies only when the lawyer at issue is "likely to be a necessary witness" at trial. The Government does not explain why any lawyer from SG—let alone one who is representing the ABA in this case—is likely to be a necessary witness at trial. To be clear, the ABA will not call any lawyer from SG as a witness at any trial of this matter. Unsurprisingly, the Motion fails to identify a single case from this District, or anywhere else, in which a trial court disqualified a law firm under similar circumstances.

Counsel for the ABA made the Government aware of these obvious deficiencies during the meet and confer process. This Motion followed. The Motion should be denied.

## I.    FACTUAL BACKGROUND

On June 16, 2025, the ABA sued Defendants (the "Government"), alleging they adopted an unlawful, coordinated policy of sanctioning law firms and their lawyers for engaging in speech the Government does not like. ECF No. 1 ("Compl.") ¶¶ 4-22. The ABA alleges that the Government effectuated a policy of law firm intimidation designed to coerce lawyers and law firms to abandon clients, causes, and policy positions the President does not like. *Id*. ¶ 4. The ABA alleges the Government effectuated this Intimidation Policy by issuing and threatening to issue punitive executive orders against law firms ("Law Firm Orders"), which could be avoided through settlements (the "Agreements") requiring each law firm to make changes to their hiring practices, alter pro bono client selection practices, change "diversity, equity, and inclusion" practices, and commit tens or even hundreds of millions of dollars in pro bono resources to causes the Administration favored. *Id.* ¶¶ 4, 8, 88-95, 130, 136, 149, 151.

In support of the ABA's allegations of the existence, scope, and purpose of the Policy, the ABA cited details related to each of the Law Firm Orders issued by the Government. *See id*. ¶¶ 69-84 (Order against Perkins Coie); ¶¶ 85-95 (Order against Paul Weiss); ¶¶ 107-114 (Order against Jenner & Block); ¶¶ 115-119 (Order against WilmerHale); ¶¶ 120-128 (Order against Susman Godfrey). Four of the five firms who received a Law Firm Order successfully challenged the Order in court. *See* Mot. at 2-3 (citing the law firm cases). But Paul Weiss—along with eight other firms who had not yet received a Law Firm Order—negotiated and entered into Agreements with the Administration to avoid such Orders or (as to Paul Weiss) have them rescinded. *See id.* ¶¶ 4, 7-8, 129-144. As alleged in the Complaint, the existence of the Agreements reflects the Law Firm

3

Intimidation Policy's "core purpose of coercion"—in short, the Government seeks to coerce law firms and lawyers "into abandoning representations, speech, and other conduct the President dislikes (such as immigration cases or diversity initiatives)." *Id*. ¶¶ 7, 8. The full details of those Agreements were not made public—nor were the communications, if any, between the Administration and the law firms negotiating or discussing those Agreements.

On March 31, 2026, the Court denied the Government's motion to dismiss for lack of subject matter jurisdiction. *Am. Bar Ass'n v. Exec. Off. of the President*, No. 1:25-cv-01888, 2026 WL 890410, at *10 (D.D.C. Mar. 31, 2026).

On May 13, 2026, the ABA served its first discovery requests on the Government, including for documents and communications exchanged with third parties about the Law Firm Orders and Agreements. *See* ECF 61-1. On June 12, 2026, the Government served responses and objections to the ABA's first document requests. As to every request issued to the Executive Office of the President ("EOP"), the EOP claimed that each request was overbroad in violation of *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004), and for certain requests, that the ABA should be required to obtain responsive documents from third parties or other agency Defendants. Those objections are at issue in the ABA's currently-pending motion to compel. *See* ECF 61.

Also in June 2026, the ABA served a subpoena *duces tecum* and a subpoena *ad testificandum* on Boris Epshteyn, a private non-governmental citizen (the "Epshteyn Subpoenas"). The Epshteyn Subpoenas requested that Epshteyn produce his communications with law firms that negotiated Agreements with the Government to avoid being subject to a Law Firm Order, as well as his communications with the Government about those negotiations. *See* Ex. 1, at ECF p. 19.

On July 2, 2026, the Government filed a notice that it has moved to quash the Epshteyn Subpoenas, arguing they sought information covered by the presidential communications

4

privilege, notwithstanding that Epshteyn is a private citizen with no government title and that any communications with law firms were necessarily sent to third parties outside the White House. *See* ECF 60, 60-1. Upon consent of the Government and Epshteyn, that motion has been transferred to this District. *See In re Subpoenas on Boris Epshteyn*, No. 26-mc-00333 (KPF), ECF 10.

Also on July 2, 2026, the Government served on the ABA a notice of Defendants' intent to serve third party subpoenas ("Law Firm Subpoenas") for documents and a deposition of all of the firms that received a Law Firm Order as well as all firms that entered into an Agreement with the Government to avoid or reverse such an Order. *See* ECF 67-1. In all, the Law Firm Subpoenas purport to demand depositions of "law firm managing partners, co-managing partners, chairs, and/or co-chairs" for each of the fourteen subpoenaed firms. ECF 67-1, at 2-3.

The Law Firm Subpoenas largely mirror requests made by the ABA in the Epshteyn Subpoenas. *Compare* ECF 67-1, at 18 (Government's noticed subpoena to Perkins Coie) *with* Ex. 1, at ECF p. 19 (ABA subpoena to Epshteyn). In other words, the Government's position is that the communications that the ABA requested from Epshteyn cannot be produced by Epshteyn because they are covered by the presidential communications privilege—but that many of those very same communications **can** be produced by the law firms in response to subpoenas issued by the Government. According to a public statement from the Department of Justice, Defendants "sent the subpoenas to the law firms to reinforce our argument that the ABA should obtain this information from its own members, rather than a close presidential advisor[.]"[1] As counsel for the ABA informed the Government during the meet and confer process, none of the attorneys for the

---

[1] Justin Henry, "DOJ Says Big Law Subpoenas Protect Privacy of Trump Legal Advice," *Bloomberg Law* (July 16, 2026), *available at* https://news.bloomberglaw.com/business-and-practice/doj-says-big-law-subpoenas-protect-privacy-of-trump-legal-advice.

ABA are representing SG in connection with the Government's noticed subpoena to the firm.

Shackelford Decl. ¶ 8.

## II.    ARGUMENT

Rule 3.7, "Lawyer as Witness," provides (emphasis added):

(a) A lawyer shall not act as advocate **at a trial** in which **the lawyer** is likely to be **a necessary witness** except where:
(1) The testimony relates to an uncontested issue;
(2) The testimony relates to the nature and value of legal services rendered in the case; or
(3) Disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may not act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness if the other lawyer would be precluded from acting as advocate in the trial by Rule 1.7 or Rule 1.9. . . .

Rule 3.7's comments explain that the Rule's purpose is to prevent "prejudice [to] the opposing party" or "a conflict of interest between the lawyer and client." Rule 3.7, cmt. 1. "[T]he Rules should not be interpreted to interfere unnecessarily with a client's choice of counsel," D.C. Bar Ethics Op. 228, and "[e]ven if there is risk of [] prejudice" to the opposing party by the advocate-witness's representation at trial, subparagraph (a)(3) requires a balancing "between the interests of the client and those of the opposing party," Rule 3.7, cmt. 3.

Whether a disqualification motion under Rule 3.7 should be granted "is committed to the sound discretion of the district court," which should apply "particularly strict judicial scrutiny" because "disqualification of a party's chosen counsel is a drastic measure that is disfavored by the courts." *Ambush*, 282 F. Supp. 3d at 61-62 (cleaned up). Disqualification is "warranted only rarely in cases where there is a serious question as to counsel's ability to act as a zealous and effective advocate for the client or the substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party." *Id*. at 62 (quotations and alterations omitted).

6

**A.      The Government fails to identify any individual "lawyer" to whom Rule 3.7(a) might apply.**

The Motion should be denied because the Government fails to identify any "lawyer" who is subject to disqualification. Rule 3.7(a) prohibits "a lawyer" from acting as "advocate at a trial in which the lawyer is likely to be a necessary witness" unless certain circumstances apply. According to its plain language, the Rule is aimed at a situation in which an individual lawyer— "**the lawyer**"—acts as both a trial advocate and a necessary witness in the same trial. *See also* D.C. Bar Ethics Op. 228 (describing the Rule as applying to a "lawyer" acting as an "'advocate at a trial' when **he or she** is likely to be a necessary witness" (emphasis added)). The Rule's focus on an individual attorney acting as both trial advocate and witness is consistent with the purpose of the Rule to avoid confusion that could occur when "[i]t may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." Rule 3.7, cmt. 2.

The Government fails to identify any "advocate-witness" in the first instance, because there is none.[2] Instead, the Government insists that the entire law firm must be disqualified. The Motion fails to cite a single case in which an entire firm was disqualified under D.C. Rule 3.7. That is unsurprising, since the comments to the Rule specify that "there is no general rule of imputed disqualification applicable to Rule 3.7." The only portion of Rule 3.7 that could result in an entire firm being disqualified is 3.7(b), which applies only when a necessary witness from the law firm "would be precluded from acting as advocate in the trial by Rule 1.7 or Rule 1.9," governing actual conflicts of interest. *See also* D.C. Rule 3.7, cmt. 5 ("If the only reason for not permitting a lawyer to combine the roles of advocate and witness is possible prejudice to the opposing party, there is

---

[2] Even if the Motion could be interpreted liberally to suggest that the "lawyer" at issue is the Susman Godfrey managing partner whom the Government says it will subpoena, there would still be no basis for disqualification. Ms. Srinivasan does not represent the ABA. *See* Shackelford Decl. ¶ 3. And as described *infra*, at 14-15, there is no basis to conclude that any SG lawyer, including Ms. Srinivasan, is "likely to be a necessary witness" at trial.

no reason to disqualify other lawyers in the testifying lawyer's firm from acting as advocates in that trial."). The Government does not argue that any SG attorney has a conflict of interest with respect to the ABA under Rules 1.7 or 1.9. And there are no such attorneys. The Government refers to "prejudice" four times in its brief, *see* Mot. at 4-5, but never once attempts to articulate what prejudice it would suffer under its vision of a hypothetical violation of Rule 3.7. Because the Motion does not identify any "lawyer" for the ABA who will act as both trial counsel and "a necessary witness," the Motion should be denied outright.

### B.    Rule 3.7 is "limited to the trial stage[.]"

The Government cites D.C. Bar Ethics Opinion 228 two times, Mot. at 4-5, 7, without acknowledging the central conclusion of the Opinion: "**All of the reasons underlying the rule relate to concerns that might arise only at trial.** Indeed, **Rule 3.7(a)'s reach is limited to the trial stage,** i.e., the lawyer is prohibited from acting **only as 'advocate at a trial'** when he or she is likely to be a necessary witness." D.C. Bar Ethics Op. 228 (emphasis added). In short, Rule 3.7 does not apply to the pretrial stage, but instead specifically governs representation of a client "at a trial." Rule 3.7(a); *see* D.C. Bar Ethics Op. 228 ("D.C. Rule 3.7(a), by its terms, extends only to prohibit advocacy at a trial. . . . Had the District of Columbia Court of Appeals intended the rule to apply beyond prohibition of courtroom representation, the rule could have been so written[.]").[3]

---

[3] Notwithstanding the clear language in Ethics Opinion 228, the Government misleadingly suggests that the Opinion contemplates the application of Rule 3.7 to disqualify an attorney (or law firm) even before trial. Mot. 7-8. The Opinion explains that Rule 3.7 "by its terms, **extends only to prohibit advocacy at a trial**," but that there might be situations in which "it may be best for a lawyer-witness to decline representation of a client" in a pretrial motion that would require "argument of his/her own testimony," based on **other** Rules, such as Rule 1.6 and Rule 1.7. D.C. Bar Ethics Op. 228 (emphasis added). The Government does not (and has no basis to) argue that SG is in violation of Rule 1.6 or 1.7 based on its representation of the ABA. Even more to the point, the Government cannot identify any pretrial proceeding in which a lawyer representing the ABA would also need to testify.

The limited application of the Rule in trial settings is explicit in its plain language. And the justifications for the Rule likewise all relate to the avoidance of issues specific to trials—for example, "the possibility that, **in addressing the jury**, the lawyer will appear to vouch for his own credibility[.]" D.C. Bar Ethics Op. 228 (emphasis added). At this early stage of the case, disqualification of the ABA's counsel of choice would "serve only to deprive the client of the lawyer or law firm which not only knows the case best but with whom the client most likely has an established relationship." *Id*.[4] Such an outcome would be particularly unfounded here, where it is entirely unclear whether any SG lawyer will ever even be deposed, let alone testify at a potential eventual trial. Putting aside any substantive or procedural objections the law firms subject to the Government's notice of subpoena may have with respect to having a partner from their firm deposed by the Government, the Government has noticed subpoenas for fourteen separate depositions, ECF 67-1—four more than the total number of permitted depositions in this case, ECF 57—although it is unclear which, if any of these subpoenas have actually been served.

Application of Rule 3.7 is likewise unwarranted when, as here, any eventual trial will be to the Court and not a jury. Rule 3.7 is designed to prevent confusion by the trier of fact, and that concern is minimal when a case is tried to a judge. "[A]s numerous courts and commentators have recognized," the concern over prejudice to the opposing party is "derived from the fear that the

---

[4] The Government insists that the ABA would not be prejudiced by disqualification because the ABA could choose as substitute counsel "presumably any law firm in the country," aside from "fact witnesses in these proceedings." Mot. at 9. That is speculation. As alleged in the Complaint, the Law Firm Intimidation Policy itself targets "law firms that have litigated against the federal government," Compl. ¶ 166, and by design has narrowed the pools of counsel willing to take on disfavored representations. In any event, the Government's position would apply equally to every other law firm who received a Law Firm Order or the threat of one, plus all firms who entered into Agreements with the Administration—eliminating at minimum more than a dozen of the country's most successful law firms from the ABA's options. Indeed, the Government's position would mean that the Government itself could prompt disqualification of any law firm the ABA may choose to represent it by issuing a Law Firm Order against the firm, or even threatening one.

jury will either accord such testimony undue weight, or will be unable to distinguish between the attorney's testimony, offered under oath, and his legal argument, offered in rhetorical support of his client's case." *Crowe v. Smith*, 151 F.3d 217, 233-34 (5th Cir. 1998). This has caused some courts to hold that rules similar to D.C. Rule 3.7 are not applicable in bench trials. *See id*. at 234 (citing cases). The Court need not decide that issue here because, regardless of whether the Rule could apply to bench trials, the Government has utterly failed to articulate any possible prejudice requiring pretrial disqualification.

Courts in this District have also acknowledged that permitting disqualification under D.C. Rule 3.7 during the early stages of a case would "encourage tactical motions to disqualify, giving some litigants an incentive to call their opponents' lawyers as witnesses when the information sought could easily be obtained elsewhere." *Canfield v. Stone*, No. 93-cv-1022, 1993 WL 468451, at *2 (D.D.C. Oct. 25, 1993); *United States v. Crowder*, 313 F. Supp. 3d 135, 146 (D.D.C. 2018) (noting in denying disqualification motion under Rule 3.7 that "the Court must remain mindful that disqualification motions may be used as procedural weapons to advance purely tactical purposes") (quotations omitted). Here, the Government has been well aware of the references to the Law Firm Order against SG since the Complaint was filed over a year ago. ECF 1. According to the Government's own theory, the Government was aware of the supposed conflict under Rule 3.7 as soon as the Complaint was filed, but sat on its hands through the motion to dismiss phase and well into discovery. Then, just after its **own** decision to notice a subpoena for the testimony of a managing partner of SG, the Government filed this Motion. Application of the Rule solely to "representation at trial" is necessary to avoid incentivizing such tactics. *Canfield*, 1993 WL 468451, at *1, *2.

10

Unsurprisingly in light of the D.C. Bar's unequivocal guidance, the Motion does not cite a single case in which a lawyer (let alone a law firm) was disqualified under D.C. Rule 3.7 at this stage of the proceedings. For good reason. This Court routinely refuses to disqualify attorneys under D.C. Rule 3.7 in the pretrial stage—even where, unlike here, there might be grounds to do so at the trial stage. *See Ambush*, 282 F. Supp. 3d at 65 (citing D.C. Bar Ethics Op. 228 and concluding that request for disqualification was "premature" because "even a lawyer who is likely to be a necessary witness at trial is not disqualified from representing his client during pretrial proceedings"); *U.S. Soccer Fed'n Found., Inc. v. U.S. Soccer Fed'n, Inc.*, No. 18-2856 (TJK), 2019 WL 4673718, at *6 (D.D.C. Sept. 25, 2019) (denying motion to disqualify because "the rule only applies to trial counsel" and as such, "[g]iven the early stage of these proceedings, it would be premature to disqualify [the lawyer] from participating in a possible trial that may be years down the road"); *Canfield*, 1993 WL 468451, at *1 (denying motion to disqualify under Rule 3.7 "at this early stage" because Rule 3.7 "clearly applies to trial counsel" and not "representing the client through pretrial motions"); *Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78, 116 (D.D.C. 2020) (denying disqualification motion because "[t]his case is nowhere near trial; on its face, the rule does not prohibit [the attorney] from representing Defendants in the pre-trial stages").

The Government ignores those holdings and does not cite a single case from the District of Columbia in its examples of pretrial disqualification. Mot. at 6-7. And none of the Government's own cited cases support disqualification here. First, some of the Government's own cases found no basis for pretrial disqualification at all. In *Droste v. Julien*, the Eighth Circuit concluded that "the district court abused its discretion" **by disqualifying an attorney** because the analogous rule "on its face does not apply to pretrial proceedings," and there was "no indication lawyer Adams's

11

pretrial activity would have revealed her dual role at trial." 477 F.3d 1030, 1036 (8th Cir. 2007); *see also Com. Com. Partners, LLC v. Milliken & Co.*, No. 4:22-cv-00020, 2022 WL 17093650, at *3 (D. Utah Nov. 21, 2022) (acknowledging the possibility that disqualification from certain pretrial matters "may be appropriate" under certain conditions but denying request for disqualification).

In the cases the Government cites that do involve some sort of disqualification, the witness-advocate (1) was part of the team representing the client in the case; and (2) the pretrial activities at issue involved obtaining evidence which, if admitted at trial, would reflect the attorney's dual role.[5] The Government has not made and cannot make that showing here.

---

[5] *See Droste*, 477 F.3d at 1036 (the "one exception" to the general rule that disqualification does not apply to pretrial proceedings is for "pretrial activity" that "includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role" as an advocate-witness); *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1299 (D. Colo. 1994) (attorney at issue sought to represent client at depositions and in trial and was likely to be deposed and testify at trial because he was the "only individual" on defendant's side that had "first hand non-privileged knowledge" of "material facts at issue"); *Fognani v. Young*, 115 P.3d 1268, 1269-70, 1274-77 (Colo. 2005) (en banc) (remanding to the trial court to issue a disqualification order keeping in mind that the court "may properly limit the attorney's role" in deposition proceedings if they "would likely be revealed at trial" in a case in which the lawyer at issue was the clients' son; was alleged to have been "privy to certain inculpatory admissions by" the defendant; and where clients intended "maintain [the attorney] as a witness"); *Doe v. Yim*, 55 Cal. App. 5th 573, 584-85 (2020) (attorney subject to disqualification for trial, evidentiary hearings, and depositions was the client's mother and a fact witness to alleged sexual abuse, and it was undisputed that the attorney would testify); *Redding v. Prosight Specialty Mgmt. Co.*, No. CR 12–98–H–CCL, 2014 WL 12783297, at *1, *3-4 (D. Mont. Feb. 3, 2014) (attorney at issue sought to represent client notwithstanding that she "possesse[d] information unobtainable elsewhere regarding" relevant underlying mediation and settlement, and would therefore be deposed in the case and was "likely to be a necessary witness" at trial); *Merchant & Gould, P.C. v. Premiere Global Servs., Inc.*, No. 09-03144, 2010 WL 11646623, at *5-6 (D. Minn. Nov. 15, 2010) (attorney at issue sought to represent client at trial notwithstanding that he had already been deposed and was likely a necessary witness at trial); *Agena v. Cleaver-Brooks, Inc.*, No. 19-00089, 2019 WL 11248588, at *4 (D. Haw. Oct. 17, 2019), *aff'd*, 428 F. Supp. 3d 267 (D. Haw. 2019) (attorneys at issue conceded they would be likely witnesses at trial); *Waite, Schneider, Bayless & Chelsey Co. v. Davis*, 253 F. Supp. 3d 997, 1020 (S.D. Ohio 2015) (concluding that the advocate-witness should have recognized his status as a necessary witness earlier, but that the court could avoid any jury confusion as to the attorney's

Finally, even when courts have disqualified an individual attorney from certain pretrial activities under circumstances not at issue here, there was still no wholesale disqualification. For example, in *World Youth Day*, the attorney subject to the disqualification motion was the same individual who was involved in negotiating the underlying deal that was the subject of the lawsuit. 866 F. Supp. at 1299. The attorney was "the only individual on [defendant's] side with first-hand non-privileged knowledge of many relevant and material facts at issue in [the] case." *Id*. at 1302. As a result, the court concluded that the attorney's testimony would be necessary at trial, and that he should be disqualified as trial counsel and prohibited from taking or defending depositions in the case, because such evidence (i.e., the deposition testimony) "if admitted at trial, would reveal the attorney's dual role." *Id*. at 1303. Yet even then, the attorney "may continue to participate in other pretrial litigation activities such as strategy sessions, pretrial hearings, mediation conferences, motions practice and written discovery." *Id*. In other words, even when it was entirely clear that the same lawyer who was representing the client in the case would also be essential at trial as the "only" witness with "first hand non-privileged knowledge" of "many relevant and material facts," the court **still** did not order the wholesale disqualification that the Government seeks here—let alone disqualification of an entire firm. *Id*. at 1302; *see also Agena*, 2019 WL 11248588, at *3, *4 (declining to extend disqualification to "other pretrial proceedings" beyond taking and defending depositions in case in which two attorneys at issue conceded they "will likely testify as witnesses at trial").

The Government fails to identify a single case disqualifying an attorney from participation in all pretrial proceedings, and refuses to acknowledge the D.C. caselaw specifying that Rule 3.7

---

participation in pre-trial depositions by having counsel refer to the deposing attorney using some "opaque substitute for [the attorney's] name").

does not authorize such disqualification. Because the Motion improperly seeks wholesale, pretrial disqualification under Rule 3.7 of the entire firm, it must be denied.

**C.      There is no SG lawyer who is "likely to be a necessary witness" in any trial of this case.**

Equally and independently fatal to the Motion is that the Government does not (and cannot) identify any SG lawyer who is representing the ABA and "is likely to be a necessary witness" at trial. D.C. Rules of Prof. Conduct 3.7(a). In assessing whether an attorney is "likely" to be a "necessary witness" at trial, D.C. courts consider factors such as whether the attorney's testimony is likely to be necessary to establish a critical (and disputed) element in the case, and the availability of an alternative source of evidence. *See, e.g.*, *Crowder*, 313 F. Supp. 3d at 146 (denying disqualification because the Government failed to offer evidence that counsel's "testimony is likely to be needed" and that the issue "will remain a contested issue by the time of trial"); *Butler*, 459 F. Supp. 3d at 116 (concluding that it was impossible to know "whether [the attorney's] testimony will be 'necessary' to the conduct of a trial (or whether a trial will ever occur)" and denying disqualification); *Council for the Nat'l Reg. of Health Serv. Providers in Psychology v. Am. Home Assur. Co.*, 632 F. Supp. 144, 147 (D.D.C. 1985) (denying disqualification even under prior, more stringent rule, because "the attorney's testimony is not necessary to establish a crucial element of the case").[6]

Despite alleging that SG is a "central player" in this case, Mot. at 1, the Government does not offer any theory regarding (1) which of the undersigned attorneys are likely to be necessary witnesses at trial; (2) what party would call such a witness; (3) what the subject of their testimony

---

[6] That these factors are difficult to assess in the early stages of the case is one of the reasons why Rule 3.7 does not apply in pretrial proceedings. *See Butler*, 459 F. Supp. 3d at 116; D.C. Bar Ethics Opinion 228 (limiting the Rule to trial because, e.g., "the case may be settled in advance of trial" and "the lawyer's testimony may be replaced with other evidence at trial").

would be; or (4) why such testimony is likely to be required with respect to a contested issue at trial. No SG lawyers appear on any party's initial disclosures—which were exchanged well after the ABA's first discovery requests were served. *See* ECF 61-1 (discovery requests dated May 13, 2026); Exs. 2, 3 (initial disclosures dated June 12, 2026). And to be clear, the ABA does not intend to call any SG lawyer, let alone any of its own counsel, as a witness at any trial of this matter. Nor does the fact that the ABA made a single document request for the Executive Office of the President's communications with each of the firms that received a Law Firm Order somehow transform any of the ABA's attorneys into a necessary trial witness.

Undersigned counsel has not identified a single case in which a party even sought disqualification of a law firm under circumstances like these—where no substantial discovery has been served; no depositions have been taken and no witness lists exchanged; and no attorney for the firm sought to be disqualified has even been identified as the basis for the disqualification— let alone a case in which such a motion was granted. And D.C. courts routinely reject requests for disqualification when the movant fails to show that the lawyer is likely to be a necessary witness at trial, even in cases where, unlike here, the movant **has** identified a specific attorney who may testify at trial. *Butler*, 459 F. Supp. 3d at 116 ("no one knows whether" attorney's testimony "will be 'necessary'" at trial, even though the attorney would likely be deposed); *Crowder*, 313 F. Supp. 3d at 146 (Government failed to provide evidence that the attorney's "testimony is likely to be needed" on a "contested issue by the time of trial"); *Am. Home*, 632 F. Supp. at 147 (relevant testimony could be obtained from a witness other than the subject attorney).

### III.    CONCLUSION

The Government asks this Court to take the "highly disfavored" step of stripping the ABA of its counsel of choice in this litigation. *Crowder*, 313 F. Supp. 3d at 141. The Government does

so (1) without identifying the "lawyer" it claims is in violation of Rule 3.7; (2) for the purposes of the entire proceeding, despite the Rule's clear application solely to trial; and (3) in the absence of any colorable suggestion that one of the ABA's lawyers will be "a necessary witness" at trial. The ABA respectfully requests that the Court deny the Motion.

Dated:  July 27, 2026

*/s/Stephen Shackelford, Jr.*
Stephen Shackelford, Jr. (D.C. Bar #NY0443)
Beatrice Franklin (*pro hac vice)*
Jillian Hewitt (*pro hac vice)*
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Tel.: 212-336-8330
sshackelford@susmangodfrey.com
bfranklin@susmangodfrey.com
jhewitt@susmangodfrey.com


Neal Manne (D.C. Bar #357012)
Barry Barnett*
Harry Susman (*pro hac vice*)
Justin A. Nelson (D.C. Bar#490347)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
nmanne@susmangodfrey.com
bbarnett@susmangodfrey.com
hsusman@susmangodfrey.com
jnelson@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel.: 310-789-3100
dbrook@susmangodfrey.com

Jordan Connors (*pro hac vice*)
Steve Seigel (D.C. Bar#D00473)
Katherine Peaslee (*pro hac vice*)

16

SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, Washington 98101
Tel: 206-516-3880
jconnors@susmangodfrey.com
sseigel@susmangodfrey.com
kpeaslee@susmangodfrey.com

*pro hac vice* forthcoming

*Attorneys for Plaintiff American Bar Association*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered participants.

*/s/Stephen Shackelford, Jr.*
Stephen Shackelford, Jr.
