**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN BAR ASSOCIATION, *Plaintiff,* v. EXECUTIVE OFFICE OF THE PRESIDENT, *et al.,* *Defendants.* | Case No. 1:25-cv-01888-AHA |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISQUALIFY SUSMAN GODFREY LLP**

Defendants moved to disqualify Susman Godfrey LLP ("Susman") as counsel for Plaintiff the American Bar Association (the "ABA") because Susman cannot serve as both advocate for the ABA and a fact witness in the same matter under Rule 3.7 of the D.C. Rules of Professional Conduct. This motion was prompted by the fact that *Susman*, on behalf of the ABA, sought discovery of Susman's own communications with the White House and third parties. In its response, Susman provides no explanation or justification for why it sought its own records.

Critically, Susman's lack of explanation defeats all three arguments that it raises in defense. First, it is necessary to disqualify the entire law firm, because Susman has not distinguished and cannot distinguish between which Susman attorneys are advocates and which Susman attorneys are fact witnesses. After all, Susman has sought *all* communications with Susman across the entire firm; and so *all* Susman attorneys should be disqualified. Second, Rule 3.7 is not limited to jury trials or even to trial proceedings; it extends to pre-trial discovery that may result in information to be *used* at trial. Because Susman is seeking pre-trial discovery into all Susman attorneys, and

1

that evidence may be used at trial, Susman attorneys must be disqualified from participating in discovery.  Finally, Susman insists that none of their lawyers is likely to be a fact witness at trial, but there is no reason to think that beyond Susman's say-so.  It may turn out that the Susman records that Susman seeks will produce admissible and relevant evidence; after all, why else did Susman attorneys ask for their own records?  Susman never says.

Susman couches its response in predictable rhetoric that any motion to disqualify must necessarily be part of its greater victimization narrative.  But that is just deflection.  "[T]he government has an *obligation* to bring to the Court's attention [opposing counsel's] potential conflict of interest."  *United States v. Crowder*, 313 F. Supp. 3d 135, 147 (D.D.C. 2018) (emphasis added).  Here, Susman has put itself squarely at the heart of this case and discovery, and it must be disqualified as a result.

## I.    SUSMAN SOUGHT ITS OWN RECORDS IN DISCOVERY AND PROVIDES NO EXPLANATION WHY

It is, to be sure, unusual for a law firm that is itself a party to litigation against the United States to represent a third party in a related collateral attack concerning the same underlying conduct.  *See* Exec. Order 14263, *Addressing Risks from Susman Godfrey*, 90 Fed. Reg. 15615 (Apr. 9, 2025) ("Susman EO"); *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15 (D.D.C. 2025), appeal pending No. 25-5310 (D.C. Cir.) ("Susman lawsuit"); Compl. ¶¶ 120-128 (referencing Susman over 50 times in total).  But Defendants did not move to disqualify Susman on that basis.

Rather, disqualification is required because Susman has put itself at the center of this litigation and sought discovery of its own records.  The ABA's first request for production ("RFP") to Defendant the Executive Office of the President ("EOP") seeks "[a]ll communications … sent to, received from, or participated in with … *Susman Godfrey*." (emphasis added).  Similarly, the

ABA has noticed a subpoena to a third party that seeks "[a]ll communications … sent to, received from, or participated in with … *Susman Godfrey*." RFP #1 (emphasis added).  More broadly, the ABA seeks broad discovery into all Defendants and third parties concerning the Executive Order addressing risks from Susman.  *See* RFPs 1, 3, 5, 9-16, 24.

Why would a law firm seek its own records in discovery?  If any such records exist, Susman already has them in its own files.  And it stands to reason that Susman would not have used its first RFP to request an empty set of records.  The only logical conclusion is that Susman believes that its own attorneys possess relevant, admissible evidence that they would use at trial.  By seeking its own records, which it already possesses and as to which it necessarily knows the substance, Susman effectively concedes its attorneys are material fact witnesses.  At best, Susman's strategy of subpoenaing its own communications is a ploy to put these records front and center in this litigation, while using other parties to authenticate them.  The Court should therefore grant Defendants' motion to disqualify.

## II. SUSMAN'S DISCOVERY REQUESTS SEEKING ALL COMMUNICATIONS INVOLVING ITS OWN LAWYERS REQUIRES DISQUALIFIACTION OF THE ENTIRE FIRM

In its response, Susman makes three arguments: (1) Rule 3.7 applies only to individual "lawyers," not entire law firms; (2) Rule 3.7 applies only to "trials," not pre-trial discovery; and (3) Susman insists that no Susman lawyer is "likely to be a necessary witness."  But all these arguments are fatally undermined by the fact that Susman has sought its own communications in discovery.

### A. All Susman lawyers must be disqualified because Susman fails to identify which lawyers are fact witnesses and which lawyers are advocates.

Susman argues that Rule 3.7 applies only to "lawyers," not to entire firms.  ECF No. 70 at 7.  But text, precedent, and logic indicate the opposite.

First, the text of Rule 3.7(a) applies to any "lawyer" who "is likely to be a necessary witness," and does not limit the number of lawyers who may be disqualified. Further, the very next subsection explains that, "A lawyer may not act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness if the other lawyer would be precluded from acting as advocate in the trial by Rule 1.7 or Rule 1.9." That subsection expressly contemplates the possibility that every lawyer at a firm could be disqualified.

Second, courts have in fact extended the advocate-witness prohibition to entire firms. For example, the court in *In re Diet Drug Litigation* affirmed a district court order granting a "motion to disqualify attorneys from Parker Waichman LLP (the Parker firm) from representing plaintiffs at their depositions in this action" under Rule 3.7. 180 A.D.3d 483, 483, 119 N.Y.S.3d 94, 95 (2020). After quoting New York's version of Rule 3.7, the court explained that "the witnesses from the Parker firm would be material witnesses" and would "provide material and necessary testimony at trial." *Id.*; *see also Fognani v. Young*, 115 P.3d 1268, 1270 (Colo. 2005) (remanding to district court "to determine whether [the entire firm] need also be disqualified from its representation of the plaintiffs at trial"). It may be less common to disqualify an entire firm, but lawyers rarely use discovery to seek all communications with any lawyers at their firm in any litigation, much less in a case the challenging an Executive Order impacting their entire firm

Third, logic reinforces the conclusion supported by Rule 3.7's text and the precedent discussed above. Firms are composed of lawyers, and Susman has created a conflict that extends to the entire firm. After all, the ABA—through Susman—sought records of all communications with Susman, not just some subset of its attorneys. Notably, the ABA has not disclaimed the possibility that any of its attorneys of record are percipient witnesses in connection with its claims in this case. Nor has the ABA disclaimed the possibility that any of its attorneys of record are also

4

involved in Susman's own legal challenge against the relevant Executive Order. Although counsel declares that "[n]one of the attorneys representing the ABA in this litigation are representing SG in connection with any subpoena," ECF No. 71 at 2, the declaration is silent regarding the conflict at issue, which is whether any counsel of record in this action is a fact witness relevant to the ABA's claims and/or discovery requests. Thus, despite the opportunity to address the animating issue head on, Susman has not provided any information to allow Defendants and this Court to assure themselves that counsel of record are not also fact witnesses. Unless and until discovery has concluded, it is unclear which Susman attorneys are fact witnesses and which are only advocates. Susman attorneys should not be allowed to engage in discovery if they cannot be ruled out as fact witnesses.

### B. Disqualification is required now, not later.

Susman next argues that Rule 3.7 is "limited to the trial stage" and that Defendants' motion to disqualify is either premature or too late. *Compare* ECF No. 70 at 8 (arguing "Rule 3.7 does not apply to the pretrial stage"), *with id.* at 10 (arguing "Government was aware of the supposed conflict under Rule 3.7 as soon as the Complaint was filed, but sat on its hands through the motion to dismiss phase and well into discovery"). Susman also argues that the rule is limited to jury trials, not bench trials. ECF No. 70 at 9-10. Again, text, precedent, and logic say otherwise.

The text of Rule 3.7 prohibits a lawyer from "act[ing] as advocate at a trial in which the lawyer is likely to be a necessary witness." The text of the rule does not distinguish between "jury trials" and "bench trials." *See, e.g.*, *Good Life Colo., LLC v. WLCO, LLC*, 565 P.3d 249, 259 (Colo. Ct. App. Feb. 20, 2025) ("Significantly, the rule refers to 'a trial' and not "a jury trial.'"). Indeed, as the Colorado Court of Appeals explained, "[t]he risks of potential prejudice to the opposing party and a conflict of interest between the lawyer and client can arise in bench trial cases, as well

as in jury trial cases." *Id.* Moreover, this rule stands in contrast to the text of other rules that are limited by their terms to "jury trials." *Id.* at 259-60 (contrasting Colorado and California rules).

"For largely the same reasons that obtaining separate pre-trial counsel would not remedy the advocate-witness issue, neither would conducting a bench trial." *Rizzuto v. De Blasio*, No. 17CV7381ILGST, 2019 WL 1433067, at *9 (E.D.N.Y. Mar. 29, 2019). That is because "[t]he purpose of disqualification under the rule is not merely logistical, but is to ensure that the attorney can provide representation that is uncompromised by his involvement in the underlying facts of the case, preserving his objectivity and the integrity of the adversary process." *Id.* Thus, "even if the trier of fact, in this case [a judge], would not be confused by [the attorney's] simultaneous role as witness and advocate at trial, defendants are entitled to a proceeding free of the taint that can result from [the attorney's] dual roles." *Merch. & Gould, P.C. v. Premiere Glob. Servs., Inc.*, Civ. No. 09-03144, 2010 WL 11646623, at *5 (D. Minn. Nov. 15, 2010). "It is prejudicial to [the adverse parties] to burden them with the impossible task of discerning when [the attorney] is acting as an advocate and when he is acting as a witness in more subtle settings, such as taking and defending depositions and arguing evidentiary motions." *Id.* Courts have therefore applied the advocate-witness rule to bench trials. *See, e.g.*, *Mt. Rushmore Broad., Inc. v. Statewide Collections*, 42 P.3d 478, 479 (Wyo. 2002).

Further, as Defendants previously explained, courts have applied Rule 3.7 to "pretrial activity" that "includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role." *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1303 (D. Colo. 1994); ECF NO. 68 at 6 (collecting authorities). While it is true that "some authorities have concluded that the taking of depositions by an attorney/witness is not prohibited," nevertheless "[t]he weight of authority. . . appears to be to the contrary." *Green v. Moog Music,*

6

*Inc.*, No. 121CV00069MOCWCM, 2021 WL 4130530, at \*4-\*5 (W.D.N.C. Sept. 10, 2021); *see, e.g.*, *Doe v. Yim,* 269 Cal. Rptr. 3d 613, 623 (Cal. App. 5th 2020) (collecting authorities); *see also Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 253 F. Supp. 3d 997, 1019 (S.D. Ohio 2015); *Redding v. Prosight Specialty Mgmt. Co., Inc.*, No. CR 12-98-H-CCL, 2014 WL 12783297, at \*4 (D. Mont. Feb. 3, 2014). As courts have explained, the use of depositions at trial means that "there is a risk that the offer of the deposition at trial would reveal [the attorney-witness's] dual role to the fact-finder, thus implicating the concern over fact-finder confusion at the heart of the advocate-witness rule." *Williams v. Borden Chem., Inc.*, 501 F. Supp. 2d 1219, 1223 n.5 (S.D. Iowa 2007). Allowing fact-witnesses "to participate in depositions would also be prejudicial against Defendants because it would unduly complicate discovery" and "resul[t] in added litigation that could be easily avoided." *Ahern Rentals, Inc. v. Lexington Ins. Co.*, No. 209CV00679LDGRJJ, 2011 WL 13302279, at \*4 (D. Nev. Mar. 3, 2011).

Susman focuses on the timing of this motion, arguing that the motion is either too early or too late. ECF No. 70 at 10. But timing cuts strongly in favor of Defendants. Susman's role as both a party challenging government action directly in litigation and also representing a third party in a related collateral challenge is, indeed, odd. But the Government did not, and does not move to disqualify Susman on that basis (which Susman, consistent with its arguments here, would certainly have contended was premature). Rather, it was Susman's action *implicating itself in discovery* that made its problematic dual-role inescapable. The ABA, through Susman, has already served RFPs to the White House and third parties seeking communications with Susman; they have subpoenaed at least one deposition of a third-party witness that would have concerned that witness's possible communications with Susman, but for Defendants' motion to quash; and Defendants have now served their own subpoenas to forestall the ABA's improper attempts to

7

propound discovery on the White House and the third-party witness, seeking *inter alia* communications involving Susman. Thus, Defendants would be irreparably prejudiced had they waited any longer, as Susman would have already taken depositions and conducted other pretrial activities to obtain evidence to be used at trial, which could include evidence that would implicate Susman attorneys' dual roles. Susman cannot avoid its conflict by imposing a procrustean timing requirement.

Finally, this Court should reject any suggestion that Defendants' motion is being used "as [a] procedural weapon[] to advance purely tactical purposes." ECF No. 70 at 10 (citing *Crowder*, 313 F. Supp. 3d at 146). Susman makes much of the fact that Defendants filed the disqualification motion after a "decision to notice a subpoena for the testimony of a managing partner of SG . . . ." *Id*. But Defendants did so only after Susman subpoenaed a Presidential attorney and adviser for records and testimony. Nor did Defendants single out Susman in their subpoenas. Defendants served subpoenas on all firms that are relevant to the ABA's discovery requests. Indeed, as Susman acknowledges, "[t]he Law Firm Subpoenas largely mirror requests made by the ABA . . . ." *Id.* at 5. Defendants served these subpoenas seeking the same information that the ABA has already requested because it is improper, at this juncture, to propound discovery from the White House and third parties for this information. *See generally* ECF Nos 60, 67. The problem is not, as Susman suggests, Defendants subpoenaing Susman's managing partner; the problem is Susman putting itself squarely at issue in connection with the legal claims in this case and then

8

compounding that problem by seeking both party and third-party discovery for *all* communications with Susman.[1]

Defendants should not be burdened or prejudiced with having to take or defend depositions or engage in other pretrial activities that may result in obtaining evidence which, if admissible at trial, would reveal Susman attorneys' dual roles.

### C. Susman provides no basis to rule out which Susman attorneys will not be necessary witnesses at trial.

Third, Susman claims that no Susman lawyer is "likely to be a necessary witness."  But, again, Susman provides no evidence to rule out this possibility, and its self-serving assertion is directly contradicted by its RFPs for *all* communications with Susman on a firm-wide basis. Unless and until discovery is complete, Defendants and this Court have no way to distinguish between (1) Susman attorneys representing the ABA in this case and (2) Susman attorneys involved in the firm's communications, negotiations, response, or litigation over the Susman EO.

This Court should therefore disqualify Susman from participating in further pretrial activities that may result in obtaining evidence which, if admissible at trial, would implicate Susman attorneys' dual roles as fact witnesses and advocates.  Despite having been given the opportunity to do so, Susman has not identified which attorneys are fact witnesses and which attorneys are only advocates.  Susman's request for all communications with any Susman attorney necessarily requires disqualification of the entire firm.  The Government does not lightly move for

---

[1] Nor is there any merit to Susman's assertion that this motion is part of an "unlawful intimidation policy" to undermine their lawsuit.  Susman and the ABA are moving forward with this litigation, as are the other law firms challenging their EO's, which were recently argued in the D.C. Circuit.  And Susman, too, has availed itself of motions to disqualify counsel in other matters. *See, e.g.*, *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227 (2d Cir. 2016); *cf. Red Eagle Res. Corp. v. Baker Hughes, Inc.*, No. H-91-0627, 1992 WL 170614 (S.D. Tex. Mar. 4, 1992).

disqualification.  But the facts here, and Susman's own litigation strategy, create a unique case requiring disqualification.

## CONCLUSION

The Court should therefore GRANT the motion to disqualify.

Dated: July 31, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
DIANE KELLEHER
Directors, Federal Programs Branch

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

CHRISTOPHER M. LYNCH
JAMES R. POWERS
Chief Litigation Counsel, Federal Programs
Branch

*/s/ Michael Velchik__*
MICHAEL VELCHIK (D.C. Bar. 187249)
Senior Counsel
JAMES J. WEN
M. JARED LITTMAN
ADAM S. FOX
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202) 860-8388
Email: michael.velchik@usdoj.gov
*Attorneys for Defendants*

10

**CERTIFICATION OF SERVICE**

I hereby certify that, on July 31, 2026, this memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Michael Velchik*
MICHAEL VELCHIK