**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICAN BAR ASSOCIATION,

*Plaintiff*,

v.

EXECUTIVE OFFICE
OF THE PRESIDENT, *et al.*,

*Defendants*.

Case No. 1:25-cv-01888-AHA

**DECLARATION OF GARY M. LAWKOWSKI**

I, Gary M. Lawkowski, declare:

1. I currently hold the position of Deputy Assistant to the President and Deputy Counsel to the President. In this capacity, I am responsible for, among other things, providing legal advice to the President and White House staff, including advice on matters involving the invocation of the presidential communications privilege.

2. I submit this declaration formally invoking the presidential communications privilege with respect to information and documents requested in discovery by Plaintiff. I base this declaration on my personal knowledge, information made available to me in the performance of my duties, and my knowledge of the issues being litigated in the above-captioned case.

3. I am aware that, in this litigation, Plaintiff has submitted requests for information to the Executive Office of the President seeking, in relevant part, the following:

> REQUEST FOR PRODUCTION NO. 11.
> Documents sufficient to identify all individuals who participated in the drafting, editing, publishing, review, or approval of Law Firm Orders, including who first proposed the idea, who drafted the orders, who reviewed them, and who approved them.

REQUEST FOR PRODUCTION NO. 12.
Documents sufficient to identify the members of "President Trump's policy team" who are involved in "executing on his directive to hold Big Law accountable for their weaponization of justice and their lies," as referred to in the statements of White House Press Secretary Karoline Leavitt set forth in ¶146 of the Complaint.

REQUEST FOR PRODUCTION NO. 13.
Documents of "President Trump's policy team" relating to "executing on [President Trump's] directive to hold Big Law accountable for their weaponization of justice and their lies," as referred to in the statements of White House Press Secretary Karoline Leavitt set forth in ¶146 of the Complaint.

REQUEST FOR PRODUCTION NO. 15.
Social media posts, and any direct messages, discussing or relating to any Law Firm Order or Agreement.

REQUEST FOR PRODUCTION NO. 16.
Notes and communications related to any public statements, press release, signing ceremony, and/or media or press interview related to any Law Firm Order or Agreement, including those cited in the Complaint at ¶¶ 9, 76, 77, 121-122, 138-140, 144, 146, 149-153, 155-156, 160-161.

4. I am aware that on August 3, 2026, the Court in the above captioned case entered a minute order providing in relevant part:

> Defendants shall file a notice with the court identifying the names of the individuals at issue for Requests 11 and 12 and the custodians for Requests 13, 15, and 16. To the extent Defendants believe any individual's or custodian's name is properly withheld pursuant to privilege, they shall explain the basis for the privilege, including the relevant legal authorities and required evidentiary basis to support the privilege.

5. On behalf of the Office of the President, I hereby assert the presidential communications privilege with respect to the "names of the individuals at issue for Requests 11 and 12 and the custodians for Requests 13, 15, and 16" who are (or were in communication with) high-ranking White House advisors and their staffs within the Executive Office of the President. who have the responsibility of advising, assisting, and implementing decisions of the President.

6. In making this declaration, I have relied on descriptions of the documents and communications relevant to the Requests at issue provided by my staff.

7. The requests for "the names of the individuals at issue for Requests 11 and 12" seek information about "all individuals who participated in the drafting, editing, publishing, review, or approval of Law Firm Orders" and the identities of "President Trump's policy team," respectively. With the exception of those individuals performing ministerial duties, these individuals are senior White House advisors and their staffs who have broad and significant responsibility for investigating and formulating advice in connection with presidential decision making, including specifically on the matter at issue in the above-captioned case, and people communicating with senior White House advisors and their staffs in the furtherance of providing advice and counsel to the President regarding the same.

8. The disclosure of the names of these individuals would reveal information that is inextricably intertwined with the President's decision-making process in the matter at issue in the above-captioned case and the President's deliberations with his advisors.

9. Based on my experience, disclosure of the names of these individuals would allow outside observers to combine that information with other information available to the public to reconstruct or draw inferences about the structure of the presidential decision-making process in this matter, the identities of the White House advisors who participated in that confidential presidential decision-making process, and the nature of their advice.

10. Based on my experience, this would have a chilling effect on communications within the Executive Office of the President, making it more difficult for the President to obtain candid advice from and explore alternatives with a wider circle of senior advisors and their staffs. Disclosure of identities like the one demanded here would likely alter the decision-making process

of future presidents by discouraging senior White House advisors from associating with (or associating their staff with), or offering full and candid advice on, presidential deliberations on potentially controversial topics—the precise issues where fulsome, candid advice is most valuable—narrowing the range of input and advice that a president receives. This would greatly diminish the quality of decision making within the government and make it more difficult for the President to perform his duties under the Constitution.

11. The requests for "the custodians for Requests 13, 15, and 16" seek information on the custodians of documents of "President Trump's policy team" who are involved in "executing on his directive to hold Big Law accountable for their weaponization and their lies," "[s]ocial media posts, and any direct messages, discussing or relating to any Law Firm Order or Agreement," and "[n]otes and communications related to any public statements, press release, signing ceremony, and/or media or press interview related to any Law Firm Order or Agreement," respectively.

12. To the extent the requests for the custodians for Requests 13, 15, and 16 extend beyond ministerial custodians or custodians of their own public records or communications, such as public social media posts or statements, the disclosure of those custodians would also reveal the identities of White House advisors and their staffs who have broad and significant responsibility for investigating and formulating advice in connection with presidential decision-making, including specifically on the matter at issue in the above-captioned case.

13. Electronic records are generally managed by a centralized Office of Administration. Paper files and other records, such as handwritten notes, are generally are maintained by the employee him or herself until transferred to the White House Office of Records Management and then the National Archives and Records Administration. To the extent the requests for the names

of the custodians of the documents and communications at issue in Requests 13, 15, and 16 seek custodians beyond the Office of Administration, the Office of Records Management, or the National Archives and Records Administration, such as the names of advisors and staff who created or received emails relating to the "directive" at issue, those requests implicate the same concerns as the requests for the names of the individuals at issue in Requests 11 and 12 and function as back door mechanism for identifying who was involved in advising the President and his senior staff.

14. Based on my review and experience, the disclosure of the identities of the custodians of these communications and documents beyond general records management officials could allow outside observers to combine that information with other information available to the public to reconstruct or draw reliable inferences about the structure of the presidential decision-making process in this matter, the identities of the White House advisors and their staff who participated in that confidential presidential decision-making process, and even the nature of their advice.

15. As with requests for the identities of the individuals at issue in Requests 11 and 12, this would have a chilling effect on communications within the Executive Office of the President, making it more difficult for the President to obtain candid advice from and explore alternatives with a wider circle of senior advisors and their staffs on precisely the issues where fulsome, candid advice is most valuable.

16. Based on my experience, the disclosure of the identities of the custodians demanded here would also harm presidential deliberations by encouraging future presidents, White House advisors, and their staff to limit written communications (including electronic communications), notes, circulation of materials, and custodial responsibility for those materials. This would

inevitably decrease participation in presidential decision-making and narrow the range of frank advice received by future presidents, undermining key interests which the presidential communications privilege exists to protect.

17. The fact that my assertion is limited to the presidential communications privilege is in no way intended to suggest that this communication is not protected in whole or in part by other privileges.

18. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 17th day of August 2026.

Gary M. Lawkowski