UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN BAR ASSOCIATION,

*Plaintiff,*

v.

EXECUTIVE OFFICE OF THE PRESIDENT, et al.,

*Defendants.*

Civil Case No. 1:25-cv-01888-AHA

**PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE REGARDING THE COURT'S AUGUST 3 MINUTE ORDER**

The Government's Notice tries to avoid an indisputable principle: courts have long held that the White House is not immune from discovery—even allegedly privileged discovery, where there is a sufficient showing of need. Plaintiff American Bar Association ("ABA"), consistent with *Cheney*, made a good faith attempt to cabin its discovery requests to the narrowest possible scope that would still allow it to pursue its case. As part of that effort, Plaintiff agreed with the Court that one way to narrow certain discovery requests would be to target specific, relevant custodians. But the Government is simply unwilling to engage, at all, in the discovery process mandated by the Federal Rules of Civil Procedure or governing precedent. In short, the Government's position is that it need not engage in even the initial stages of civil discovery—identifying custodians—on the basis of privilege, and also need not provide any information that would permit Plaintiff or the Court to assess the claim of privilege—also on the basis of privilege. The Government's assertion of presidential communications privilege over the *mere identity of document custodians* finds no support in caselaw or logic. In order to invoke the privilege at all, the Government must make a showing that the communications at issue involve the inner circle of presidential advisors—a showing that necessarily requires disclosing the identities of those advisors. *See In re Sealed Case*,

121 F.3d 729 (D.C. Cir. 1997). At bottom, what the Government is trying to do is make a claim of privilege that is so broad and so vague that it cannot even be tested.

The Government's position is all the more outlandish because the identity of White House advisors is not a secret. The White House provides an annual report to Congress listing the names and positions of each staffer. *See* https://www.whitehouse.gov/wp-content/uploads/2025/07/2025-Annual-Report-to-Congress-on-White-House-Staff.pdf. The administration has repeatedly publicized the role of particular advisors, such as then-Staff Secretary Will Scharf and Deputy Chief of Staff Stephen Miller, including with respect to the Law Firm Orders specifically. *See, e.g.*, Forbes Breaking News, *WATCH: Trump Signs New Executive Order Targeting Law Firm Susman Godfrey*, available at https://www.youtube.com/watch?v=a27Ww3HMyeE ("Forbes Video"). It would be deeply troubling if the President cultivated a secret group of advisors and fought tooth and nail to keep even their names a secret.

For these reasons, and for those in Plaintiff's briefs at ECF Nos. 61 and 69, Plaintiff respectfully requests that the Court: (1) direct the Government to identify all relevant document custodians for RFPs 11, 12, 13, 15, and 16; (2) direct the Government to determine which Administration personnel may have had communications via social media regarding the Law Firm Orders and identify those relevant accounts.

## I. THE IDENTITY OF RELEVANT DOCUMENT CUSTODIANS CANNOT BE SUBJECT TO A CLAIM OF PRESIDENTIAL COMMUNICATIONS PRIVILEGE

The presidential communications privilege "is invoked only rarely" and "should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected." *In re Sealed Case*, 121 F.3d at 738, 752. The privilege applies "only to communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for

investigating and formulating the advice to be given the President on the particular matter to which the communications relate." *Id.* at 752. In cases where courts have upheld claims of executive privilege—even over the identity of a communication's author—they have been presented with a specific set of documents or records and been able to put the privilege claim to the test, including by reviewing the documents in camera. *See, e.g.*, *id.* at 735 (ordering production of documents on log for in camera review); *Aaron v. Dep't of Justice*, 2011 WL 13253641, at *8-9 (D.D.C. July 15, 2011) (concluding that some but not all of a group of documents were subject to deliberative process privilege and requiring further showing to justify withholding).[1]

The court's analysis in *In re Sealed Case* demonstrates the necessity of disclosing the identities of the presidential advisors whose communications are allegedly privileged, and why the Government's position here improperly short-circuits the process. In *In re Sealed Case*, the Government produced a privilege log for the allegedly privileged documents, including the identities of authors and recipients. 121 F.3d at 735. The court took a document-by-document approach to determining whether the authors of the documents fell within the narrow circle of presidential advisors whose communications are privileged. *Id.*, at 758. For example, the court noted that documents authored by an extern in the White House Counsel's Office would not be privileged, but for the fact that the documents were created at the request of associate White House

[1] Cases holding, in the FOIA context, that the identity of the author of a deliberative memo can be privileged are inapposite. *Cf.* Notice at 6-7. In each of those cases, the courts were not addressing a refusal even to identify relevant custodians or individuals, but were discussing application of the deliberative process privilege to specifically identified documents, in some instances reviewed in camera. *See Brinton v. Dep't of State*, 636 F.3d 600, 602-603 (D.C. Cir. 1980); *Public Citizen, Inc. v. Dep't of Education*, 388 F. Supp. 3d 29, 39 (D.D.C. 2019); *Aaron*, 2011 WL 13253641, at *2; *Cofield v. City of LaGrange, Ga.*, 913 F. Supp. 608, 612 (D.D.C. 1996). In the context of the deliberative process privilege, the privilege turns on the content of the document—unlike the presidential communications privilege, where for the privilege even to attach the author's identity (and role) is key. And in the FOIA context, unlike here, the privilege cannot be overcome by a showing of need. *See infra*, n. 3.

Counsel who did fall within the circle of privilege. *Id.* The identity of a document's author or custodian can mean the difference between what is privileged and what is not. The Government cannot claim privilege over the mere identities of the President's advisors—much less refuse to provide the identifying information that is necessary to test any future assertions of executive privilege. Relying on *In re Sealed Case*, another court in this District rejected arguments very like those the Government makes here to block the release of White House visitor records, even in the narrower FOIA context. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 592 F. Supp. 2d 111, 118 (D.D.C. 2009) ("*CREW*") ("[R]ead as a whole, *In re Sealed Case* does not advocate such a broad interpretation of the presidential communications privilege . . . such an interpretation in the context of plaintiff's FOIA action would undermine the purpose of FOIA while providing little or no additional confidentiality to the President's deliberations or decisionmaking."); *id.* (observing that "[t]he presidential communications privilege, as its name and this Circuit's opinions suggest, extends only to *communications*").

Of course, the presidential communications privilege applies only to White House staff. *See In re Sealed Case*, 121 F.3d at 752 ("[T]he privilege should not extend to staff outside the White House in executive branch agencies. Instead, the privilege should apply only to communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate."); *Jud. Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1121 (D.C. Cir. 2004). To the extent that there are non-White House individuals who "participated in the drafting, editing, publishing, review, or approval of Law Firm Orders," RFP 11, or are members of the

"policy team," RFP 12, those individuals must be immediately identified so that Plaintiff can seek their documents from EOP and any relevant agencies or third parties.

Furthermore, the Government incorrectly assumes that if it doesn't identify custodians, it won't have to provide discovery at all. Not so. The purpose of having the Government identify EOP custodians would be to narrow discovery and reduce the burden on collection and potential assertion of privilege over specific communications. *See* July 31, 2026 Tr. 42:8-10 ("THE COURT: . . . [O]ne of the ways that ordinarily courts would narrow discovery is, and parties would ask to narrow it, is like specific custodians for example."); *id.* 64:20-23 ("THE COURT: . . . I think getting those custodians, I think you should get started on that now, because it seems like something that, one, would be efficient, and, two, would help us understand whether this is a meaningful way to narrow things."). Plaintiff would of course prefer the efficiency of seeking discovery from custodians identified by the benefit of the Government's knowledge as to who is likely to have responsive documents. But if the Government does not identify those custodians, then Plaintiff will have to cast a wide net and seek discovery from many EOP custodians based on publicly-available information in order to sift through and receive the responsive documents to which it is entitled. This makes little practical sense, and the far better course is for the Government simply to identify the relevant custodians.

None of the Government's arguments to the contrary is persuasive. First, the Government argues that identifying relevant document custodians "would impermissibly provide insight into the nature and substance of the advice solicited and received." Notice at 5. But the general subject matter of the advice is already obvious—it is the drafting and execution of the Law Firm Orders. Identifying the individuals who participated in that process says nothing about the advice they gave; one custodian might have opposed a particular provision, another might have proposed a

provision that was never implemented, and so on. *See CREW*, 592 F. Supp. 2d at 119 ("[I]t would take near-omniscience for an observer to tease any accurate meaning out of the [information] for which plaintiff seeks records."). The narrow range of already-determined, public subject matter makes this case wholly unlike those on which the Government relies. In *Judicial Watch, Inc. v. United States Secret Service*, for example, the FOIA request at issue sought "records of every visitor to the White House Complex over a period of seven months." 726 F.3d 208, 211 (D.C. Cir. 2013). The court concluded that, among other reasons, construing the visitor logs to be "agency records" might create a separation-of-powers concern because providing congressionally-mandated access to information about *every* White House visitor "could substantially affect the President's ability to meet confidentially with foreign leaders, agency officials, or members of the public." *Id.* at 226. Here, of course, both the identity of presidential advisors and the subject matter of communications sought is public. Likewise, in *Property of the People, Inc. v. Office of Management & Budget*, the information sought related to eight National Security Council meetings, which were on confidential topics. 394 F. Supp. 3d 39, 47 (D.D.C. 20219). *Shapiro v. Department of Justice* is not even on point, but simply discusses an FBI analysis of whether information released through FOIA could potentially compromise "sensitive FBI sources or investigations"—concerns plainly not at issue with respect to the Law Firm Orders here. 944 F.3d 940, 941 (D.C. Cir. 2019).

Second, the Government asserts that "revealing the identity of those whom the President consults would indisputably chill participation in further deliberations," Notice at 7. A materially similar argument has been rejected in the context of a prior administration's request for absolute immunity from congressional process for current and past senior advisors to the President. *Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 102 (D.D.C. 2008). In

rejecting the executive's argument that, without absolute immunity, there would be a "chilling effect" on the candid advice provided to the President, the court explained: "[T]he prospect of being hauled in front of Congress—daunting as it may be—would not necessarily trigger the chilling effect that the Executive predicts." *Id.*

The Government's assertion of a "chilling" effect also has no plausible basis in reality.[2] The identity of White House advisors is publicly available via the annual congressional report. White House staffers post their roles publicly on LinkedIn. And the specific matters advisors work on is publicized via press conferences and public reporting. *See, e.g.*, Forbes Video at 00:21 (Mr. Scharf presents order for President Trump to sign and explains what it is); *id.* at 1:00-1:17 (President Trump asks Mr. Miller for an update on the total amount law firms have pledged so far); Right Side Broadcasting Network, *WATCH: President Trump Signs Executive Orders in the Oval Office – 3/6/25*, available at https://www.youtube.com/watch?v=3pCWUY24b9Q, at 38:15 (when asked by press if there should be further action taken against law firms, President Trump responds "I do, but that's going to be up, ultimately, to the Attorney General and various other people"); Josh Dawsey & C. Ryan Barber, *Trump's $1 Billion Law Firm Deals Are the Work of His Personal Lawyer*, Wall Street Journal (Apr. 14, 2025) ("Trump's personal lawyer Boris Epshteyn, who has been indicted in Arizona on charges related to Trump's 2020 election loss, has emerged as the face of the Trump administration's campaign against large law firms that it views as hostile to the president and his causes, according to lawyers at seven of the firms and White House officials."). In this very case, the Government has identified the names of Executive Office advisors on the single privilege log produced to date. *See* Ex. A. Nor is the Government's argument supported by

[2] The Declaration of Gary M. Lawkowski, on which the Government relies, provides absolutely no concrete information and simply relays Mr. Lawkowski's vague ipse dixit about the alleged harm from releasing the names of White House advisors. ECF No. 79-1.

precedent. While cases have held that revealing the contents of actual communications and deliberations might chill the candor of presidential advisors, simply identifying the names of close presidential advisors cannot possibly have any such effect. *See CREW*, 592 F. Supp. 2d at 119.

Finally, the Government concedes that even an assertion of presidential communications privilege can be overcome by a showing of need, but contends that Plaintiff cannot articulate such a need here.[3] Notice at 9. According to the Government, "to the extent the ABA is seeking the names of those involved in order to facilitate further discovery, requests, any documents requested using this information would necessarily be covered by the presidential communications privilege," Notice at 9. As explained above, this is an entirely circular argument that asks this Court to bless the administration's privilege assertion without requiring from the administration any basis to test whether the privilege has been properly invoked. And it asks the Court to assume, without any basis, that Plaintiff will not be able to make a showing of need to overcome the privilege asserted over specific documents. There is accordingly the greatest possible need for the names of the relevant document custodians so that Plaintiff and the Court can assess whether any privilege can properly be invoked over their responsive documents. Furthermore, it is likely that some of these custodians' relevant communications will be with third parties and therefore not subject to any plausible claim of privilege at all.

Accordingly, Plaintiff respectfully requests that in conjunction with its ruling on Plaintiff's Motion to Compel, the Court direct the Government to identify the relevant document custodians for RFPs 11, 12, 13, 15, and 16.

[3] The ability to overcome the privilege with a showing of need distinguishes this case from the FOIA cases on which the Government relies, *see* Notice at 6-7, because "[i]n the FOIA context, once even a qualified privilege like the presidential communications privilege applies to a record claimed exempt from disclosure . . . a need showing does not overcome it." *Protect Democracy Project v. Nat'l Sec. Agency*, 10 F.4th 879, 886 (D.C. Cir. 2021).

## II. THE GOVERNMENT MUST CONDUCT A REASONABLE SEARCH FOR DOCUMENTS RESPONSIVE TO RFP 15

In addition to refusing to identify any document custodians (other than President Trump, Will Scharf, and Karoline Leavitt), the Government asserts that it will refuse to search for responsive social media communications from accounts other than the official White House social media channels. Notice at 11-12. But the D.C. Circuit has held that individual accounts controlled by executive officials constitute agency records. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149-50 (D.C. Cir. 2015). And social media accounts constitute discoverable information. *See, e.g.*, *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 45-47 (D.D.C. Aug. 30, 2023). Numerous White House staffers maintain public social media accounts. *See, e.g.*, x.com/willscharf; x.com/StephenM. To the extent any administration employee communicated via social media about the Law Firm Orders, those communications are obviously (1) not subject to any executive privilege, because they are communications with third parties; and (2) responsive to Plaintiff's discovery requests.

Accordingly, Plaintiff respectfully requests that in conjunction with its ruling on Plaintiff's Motion to Compel, the Court direct the Government to determine which Administration personnel may have had communications via social media regarding the Law Firm Orders and identify those relevant accounts.

Dated: August 24, 2026

*/s/ Stephen Shackelford, Jr.*
Stephen Shackelford, Jr. (D.C. Bar #NY0443)
Beatrice Franklin (*Admitted pro hac vice)*
Jillian Hewitt (*Admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Tel.: 212-336-8330
sshackelford@susmangodfrey.com
bfranklin@susmangodfrey.com
jhewitt@susmangodfrey.com

Neal Manne (D.C. Bar #357012)
Barry Barnett (*Admitted pro hac vice*)
Harry Susman (*Admitted pro hac vice)*
Justin A. Nelson (D.C. Bar#490347)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
nmanne@susmangodfrey.com
bbarnett@susmangodfrey.com
hsusman@susmangodfrey.com
jnelson@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel.: 310-789-3100
dbrook@susmangodfrey.com

Jordan Connors (Admitted *pro hac vice)*
Steve Seigel (D.C. Bar#D00473)
Katherine Peaslee (Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, Washington 98101
Tel: 206-516-3880
jconnors@susmangodfrey.com
sseigel@susmangodfrey.com
kpeaslee@susmangodfrey.com

*Attorneys for Plaintiff American Bar Association*