UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN BAR ASSOCIATION,

*Plaintiff,*

v.

EXECUTIVE OFFICE OF THE PRESIDENT, et al.,

*Defendants.*

Civil Case No. 1:25-cv-01888-AHA

**PLAINTIFF'S OMNIBUS RESPONSE AND REPLY TO NON-PARTY BORIS EPSHTEYN'S RESPONSE AND CROSS-MOTION RELATING TO PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE (DKTS. 93, 94)**

**TABLE OF CONTENTS**

BACKGROUND ....................2

ARGUMENT ....................5

A. Rule 45 permits Court-ordered alternative service on a third-party witness who is evading service and has appeared through counsel. ....................5

1. *Compagnie* did not decide whether a court may authorize alternative service of a Rule 45 subpoena ....................6

2. By its terms, *Henderson* does not apply here. ....................9

3. Epshteyn ignores this District's decisions authorizing alternative service. ....................10

4. Epshteyn's argument that the ABA should exercise more "diligence" in the face of Epshteyn's obvious evasion is wrong. ....................11

B. Epshteyn's alternative arguments would guarantee unnecessary delay and require this Court to consider and rule on consecutively-filed motions concerning the same subpoenas. ....................12

CONCLUSION ....................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. FBI*,
186 F.R.D. 128 (D.D.C. 1998)....14, 15

*Call of the Wild Movie, LLC v. Does 1-1,062*,
770 F. Supp. 2d 332 (D.D.C. 2011)....14

*Doe v. Hersemann*,
155 F.R.D. 630 (N.D. Ind. 1994)....11

*Freeman v. Giuliani*,
No. 21-cv-3354 (BAH) (D.D.C. May 10, 2023)....5, 14, 15

*FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*,
636 F.2d 1300 (D.C. Cir. 1980).... *passim*

*Gersman v. Grp. Health Ass'n, Inc.*,
975 F.2d 886 (D.C. Cir. 1992)....11

*Henderson v. Jones Day*,
No. 19-cv-945-RDM, 2021 WL 1978793 (D.D.C. May 17, 2021)....9, 12, 13, 14

*In re LeFande*,
919 F.3d 554 (D.C. Cir. 2019)....16

*OAO Alfa Bank v. Center for Public Integrity*,
No. 00-cv-2208 (JDB) (D.D.C. Jan. 6, 2004)....11, 13, 14, 15

*Origins Tech, Inc. v. Oak Equity Holdings II, LLC*,
No. 2:23-CV-00326, 2025 WL 2652482 (D. Utah Sept. 16, 2025)....12

*United States v. Duran*,
884 F. Supp. 526 (D.D.C. 1995)....16

**Rules**

Fed. R. Civ. P. 4(e)(1)....12

Fed. R. Civ. P. 4(e)(2)(A)....11

Fed. R. Civ. P. 45(b)(1)....11

Federal Rule of Civil Procedure 45(d)(2)(B)....5, 17

Non-Party Boris Epshyten's "Response To, And Cross-Motion For Alternative Relief Relating To, Plaintiff American Bar Association's Motion Seeking Alternative Service" (the "Response") is at once confusing, improper, and baseless. Epshteyn insists he was never served with an initial document subpoena issued in June 2026 (despite signed proof of service showing that he was); has evaded service of substitute subpoenas issued in September—including through instructions to the concierge in his building to "***not let anyone up ever again***"; and, through counsel, has refused to accept service of the September subpoenas unless the ABA agrees to an indefinite delay of Epshteyn's obligation to respond to the document subpoena. Nor has Epshteyn filed a motion to quash. As a result—despite having had actual knowledge of the subpoenas for ***at least five months***—Epshteyn has yet to provide any substantive response whatsoever to them.

Now, Epshteyn asks this Court not only to countenance his campaign of evasion but to reward it with his preferred outcome: more delay. The Court should decline that invitation. Most importantly, the Response fails to contest the basic facts that make this case appropriate for alternative service: (1) Epshteyn is aware of this lawsuit—indeed, he has now ***appeared in the case*** through counsel; (2) he is aware the ABA is interested in his documents and testimony; (3) he is aware of multiple attempts at personal service; and (4) the proposed alternative service will ensure receipt of the subpoenas. *See* Minute Order, *Freeman v. Giuliani*, No. 21-cv-3354 (BAH) (D.D.C. May 10, 2023) (attached as Ex. 9 to the ABA's Motion, Dkt. 87-12).

Having failed to identify any legitimate grounds for opposing service, Epshteyn falls back on a request for still-further delay of his obligation to respond to the subpoenas. Epshteyn's requested relief runs contrary to Federal Rule of Civil Procedure 45(d)(2)(B), which requires objections to document subpoenas to be served within 14 days of service, or else be deemed waived. It also makes no practical sense. Indefinitely delaying resolution of the ABA's alternative

service motion—and therefore delaying Epshteyn's obligation to respond and/or move to quash the subpoenas—until the Government's pending motion is "fully and finally resolved," Response at 11, would effectively guarantee a second, consecutive round of motion practice concerning the exact same subpoenas following that resolution.

The ABA respectfully requests that the Court put an end to Epshteyn's efforts to avoid service of the subpoenas so that the ABA may pursue the discovery to which it is entitled.

## BACKGROUND[1]

The factual background underlying the ABA's motion for alternative service is described in its opening brief, Dkt. 87, and not repeated here.[2] Epshteyn makes an oblique—and unconvincing—suggestion in a footnote that he was not served with the original subpoenas in June 2026. Yet he offers no contrary ***evidence.*** In response to (1) a detailed description from the process server sent on June 22, 2026 describing personal service on June 18, 2026, and (2) a signed proof of service reflecting the same, *see* Dkt. 87-2, Epshteyn claims "serious doubt" about the process server's description of Epshteyn's weight (estimated at 235 pounds) and eye color (brown), asserting they are "wrong." Resp. at 7, n.2. Epshteyn does not identify his actual weight or eye color, leaving the ABA and the Court to guess at why those purportedly inaccurate observations

---

[1] Epshteyn filed an identical document as a response to the ABA's motion and as a cross-motion. *See* Dkts. 93, 94. For simplicity, the ABA refers in this brief solely to the Response. For completeness, the ABA files this brief both as a reply in support of its motion, Dkt. 87, as well as a response in opposition to the cross-motion, Dkt. 94.

[2] The ABA's motion originally sought both alternative service and a limited extension of the fact discovery deadline in order to complete third-party discovery from Epshteyn. *See* Dkt. 87. The latter request is now moot as a result of the Parties' stipulation regarding the completion of currently-pending discovery matters. *See* Dkts. 96, 97.

should be interpreted as evidence of fabrication by the process server.[3] More significantly, Epshteyn has chosen not to submit a declaration under penalty of perjury declaring that he was not personally served on June 18.

Epshteyn does not seriously contest that the ABA's process server attempted personal service of the September subpoenas on at least three occasions in September 2026. Nor does he offer any explanation for irrefutable video evidence that on September 16, 2026 (1) a doorman escorted the process server to Epshteyn's apartment, where no one answered the doorbell; and (2) when staff then called up to the apartment, its resident instructed the concierge in the building to "***not let anyone up ever again***." Dkt. 87-11 (ringing doorbell [1:35-3:28]; concierge receiving instructions from resident [6:30-6:50]).

Instead, Epshteyn focuses on the bizarre suggestion that counsel for the ABA somehow tricked his counsel into thinking it would not move for alternative service. This is both false and beside the point. On August 7, 2026, counsel for the ABA first made a proposal that would have involved counsel for Epshteyn agreeing to accept service of the subpoenas, in exchange for the ABA's agreement not to move to compel until after this Court "issues a ruling on the [Government's Motion to Quash]." Dkt. 87-6, at 11.[4] Epshteyn refused, and the ABA proceeded to attempt personal service of the September subpoenas. *See* Dkt. 87 at 11-12. Counsel for the ABA again asked Epshteyn's counsel on September 22, 2026 to accept service of the subpoenas. Dkt. 87-6, at 9. After conferring by phone, counsel for the ABA again made a proposal pursuant to which (1) Epshteyn's counsel would agree to accept service of the subpoenas and (2) the ABA

[3] Publicly-available images of Epshteyn confirm the process server's estimation of both his build and eye color.

[4] All references to docket entries use the ECF-stamped pagination at the top of each as-filed PDF.

would agree not to move to compel until "after the Government's motion is decided[.]" Dkt. 87-7, at 5-6. In other words—as reflected in those emails—the ABA's position throughout the meet and confer process was that it would be willing to defer further motion practice until this Court issued its ruling on the Government's pending motion to quash.

In response, counsel for Epshteyn rewrote the proposal. *See* Dkt. 87-7, at 4-6 (compare Hewitt email dated October 3, 2026 with Schectman email dated October 9, 2026). For the first time, counsel for Epshteyn replaced language referencing the time that "the Government's motion is decided," Dkt. 87-7 at 6, with language referring more generally to the "resolution of the Government's pending motion to quash," *id*. at 4. After another exchange of edits on October 15 and 16, *see* Dkt. 87-7 at 2-3, Dkt. 87-6 at 5-6, counsel for the ABA wrote to Epshteyn's counsel revising, among other things, the "resolution of the Government's pending motion to quash" language to clarify that such language was intended to refer to decision on the motion by the District Court. Dkt. 87-6, at 3-5.

Epshteyn's counsel did not agree to the proposed edits. Specifically, Epshteyn sought to delay any obligation to provide responses and objections to the document subpoena until after not only this Court's resolution of the motion to quash, but also the final resolution of any "motion for reconsideration or appeal[.]" Dkt. 87-6, at 2. In other words, Epshteyn ultimately conditioned agreement to accept service of process of the subpoenas on the ABA's willingness to indefinitely delay Epshteyn's obligation to issue objections—the length of which would depend in part on future decisions of the Government.

In that October 16 email—after months of attempting to come to an agreement that would obviate the need for motion practice over the service of the subpoenas, while preserving the ABA's rights—counsel for the ABA explicitly confirmed: "[I]f we aren't able to [reach] agreement on the

proposal by end of Tuesday the 20th, I expect ***the ABA will need to go ahead and move the Court to avoid further delay***." Dkt. 87-6, at 4. Epshteyn's suggestion that the ABA failed to comply with Local Rule 7(m)—or that Epshteyn was somehow caught off guard by the ABA's motion—is undermined by counsel's written correspondence.[5]

Nor does Epshteyn suggest that he would have behaved differently—or that the scope of this dispute would somehow be changed—had counsel for the ABA stated explicitly that the ABA's motion would include a request for alternative service. Indeed, in his filing, Epshteyn persists in seeking to further postpone even the *start* of the process for the ABA to obtain essential documents and testimony from him. His complaint is disingenuous at best.

## ARGUMENT

### A. Rule 45 permits Court-ordered alternative service on a third-party witness who is evading service and has appeared through counsel.

Epshteyn's lead argument against alternative service is that "Rule 45 Prohibits Alternative Service Here." Resp. at 7. His argument rests almost entirely on *FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300 (D.C. Cir. 1980), and *Henderson v. Jones Day*, No. 19-cv-945-RDM, 2021 WL 1978793 (D.D.C. May 17, 2021), but neither erects the categorical bar that Epshteyn urges the Court to adopt. *Compagnie* did not consider or decide whether alternative service for a Rule 45 subpoena may be permissible, and *Henderson* turned on facts that are the opposite of those here, making clear that the specific facts of each case dictate whether alternative service is warranted. Meanwhile, Epshteyn does not discuss even one of the decisions from this

[5] Local Rule 7(m) requires confirmation that a party filing a nondispositive motion "discuss[ed] the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." The Rule does not cover non-parties, and it would make no sense to require a meet-and-confer with a third party who is evading service. In any event, as described above, the ABA conferred with Epshteyn's counsel repeatedly—for months—to avoid or narrow the areas of disagreement, and explicitly notified Epshteyn's counsel of its intention to seek relief from the Court. *See* Dkts. 87-6, 87-7.

District authorizing alternative service of Rule 45 subpoenas (cited by Plaintiff in its Motion, Dkt. 87 at 14-17), and his suggestion that the ABA should keep trying to effectuate personal service—despite his undisputed knowledge of the subpoenas and instructions not to allow process servers up to his apartment "ever again"—is absurd.

**1. *Compagnie* did not decide whether a court may authorize alternative service of a Rule 45 subpoena.**

*Compagnie* did not interpret Federal Rule of Civil Procedure 45 directly and resolved only the "narrow issue" of whether Congress in the Federal Trade Commission Act "expressly or impliedly authorize[d] the Federal Trade Commission . . . to serve its investigatory subpoenas directly upon citizens of other countries by means of registered mail." 636 F.2d at 1304. The court explained that its answer was "primarily guided by . . . established and fundamental principles of international law." *Id.* It described "[t]he sole issue to be resolved" as "the propriety of the technique employed by the FTC to serve its subpoena abroad." *Id.* at 1306. It stressed that it was "concerned here solely with interpreting the congressional intent underlying the FTC Act as it existed at the time of the challenged service." *Id.* at 1325. And it held the subpoena "improperly served under the Federal Trade Commission Act, as we have construed it in conformity with general principles of international law." *Id.* at 1327.

The portion of *Compagnie* that Epshteyn relies on about "compulsory process" (at 636 F.2d at 1312-13) appears in the part of the opinion titled "The Legitimacy of the FTC's Method of Service Under International Law," which illustrates the difference between notice and compulsion and explains that such a difference mattered to Congress because serving compulsory process abroad "constitutes an exercise of one nation's sovereignty within the territory of another sovereign." *Id.* at 1310, 1313. The court reasoned that the distinction "takes on added significance"

when the person served is "a foreign subject on foreign soil." *Id. Compagnie **did not*** hold that Rule 45 forbids a court from authorizing alternative service when warranted.

In any event, any pronouncement by the Court of Appeals about the 1980 version of Rule 45 is at most dicta. A statement that is "not determinative of the result" is dictum, which does not create "[b]inding circuit law." *Gersman v. Grp. Health Ass'n, Inc.*, 975 F.2d 886, 897 (D.C. Cir. 1992). Nothing in *Compagnie*'s holding depends on Rule 45 or how it operates in a domestic case. Judge McGowan's concurrence proves the point; he reached the same result as the panel majority (*i.e.*, that Congress in the FTC Act did not authorize the FTC to use registered mail to serve an investigative subpoena abroad) without any reference to Rule 45, concluding that serving a foreign national abroad was "a sufficiently significant act as to require that Congress should speak to it clearly." *Compagnie*, 636 F.2d at 1327-28 (McGowan, J., concurring).

The court in *OAO Alfa Bank v. Center for Public Integrity*, No. 00-cv-2208 (JDB) (D.D.C. Jan. 6, 2004) (*see* Dkt. 87-13), reached exactly this conclusion over the non-party's opposition. There, the non-party witness, citing *Compagnie*, opposed alternative service on the ground that "the law of this Circuit require[s] in-person service of compulsory process." Dkt. 87-13, at 1. The court rejected that argument, explaining "*[Compagnie de] Saint-Gobain*'s dictum about the necessity of in-person service under Rule 45 was not dispositive of the narrow question posed in that case." *Id.* at 3. The court then authorized alternative service on the witness's attorney, plus overnight delivery to his last known address. *Id.* at 1, 3.

*Compagnie* also did not closely analyze Rule 45, as other courts have when finding alternative service permissible. Rule 45 requires only "delivering a copy to the named person," Fed. R. Civ. P. 45(b)(1), which stands in contrast to Rule 4's discussion of "delivering a copy of the summons and of the complaint to the individual ***personally***." Fed. R. Civ. P. 4(e)(2)(A)

(emphasis added). "If 'delivering . . .' as stated in Rule 45(b)(1), required personal, in-hand service, then 'personally' in Rule 4(e)[] would be pure surplusage." *Doe v. Hersemann*, 155 F.R.D. 630, 631 (N.D. Ind. 1994). And even if Rule 45 did incorporate what Rule 4 means by serving an individual, Rule 4(e) still provides that an individual "may be served" by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). D.C. law—which *Compagnie* did not consider—lets a court permit "an alternative method of service" when, "after diligent effort, a party has been unable to accomplish service," if the method is "reasonably calculated to give actual notice[.]" D.C. Super. Ct. R. Civ. P. 4(e)(3)(A); *see Origins Tech, Inc. v. Oak Equity Holdings II, LLC*, No. 2:23-CV-00326, 2025 WL 2652482, at *2 (D. Utah Sept. 16, 2025) (authorizing alternative service and noting that, "even if personal service under Rule 4 were required, courts may authorize service by alternative means as permitted under applicable state law"). Neither *Compagnie* nor *Henderson* (discussed below) considered whether court-ordered service under Rule 4(e)(1) satisfies Rule 45.

The specific facts of *Compagnie* also reflect the narrowness of its holding. The case addressed a party's unilateral decision to mail the subpoena to a company's corporate headquarters in Paris, with no court order permitting service by alternative means. The Court of Appeals' concern was that "the full range of judicial sanctions for noncompliance with an agency subpoena [could] be triggered merely by a foreign citizen's unwillingness to comply with directives contained in an ordinary registered letter." 636 F.2d at 1314. The ABA asks for something different: service by a method the Court itself authorizes, after findings that the ABA has been diligent and that the subject has evaded service despite knowledge of the subpoenas. A court order—in contrast with a unilateral, party-initiated mailing of service—***is*** "a sufficiently formal way to assert the

compulsory power of the court over [the witness] such that the lack of a personally served subpoena under Rule 45 ha[s] no effect on the validity of the court's contempt citation." *Henderson*, 2021 WL 1978793, at *3 (quoting *In re LeFande*, 919 F.3d 554, 563 (D.C. Cir. 2019)).

In sum, *Compagnie* did not erect a bright line rule that effectuating service of a third-party subpoena can only be done by personal service, and any suggestion to the contrary would be at most dicta.

**2. By its terms, *Henderson* does not apply here.**

*Henderson* also did not adopt the categorical personal-service-only rule that Epshteyn urges. *Henderson* (which never even mentions *Alfa Bank*, discussed *supra*) denied alternative service ***"[a]t least on the facts of this case***," 2021 WL 1978793, at *2 (emphasis added), making clear that those facts mattered to the outcome. There, the witness was a retired former partner of Jones Day, who had apparently moved away from her last known address and neighbors had reported she had not been at either known address "for a year or more." *Id.* at *1. The email address that the plaintiff proposed using for alternative service was one that Jones Day had "previously used to contact the witness," but there was no indication that she "regularly checks that email address." *Id.* Jones Day represented that the witness "has no relevant testimony to offer." *Id.* And no facts indicated "that the witness is subject to personal jurisdiction in this district." *Id.* at *3. As a result, the court reasoned: "***At least on the facts of this case***, the Court is persuaded that Jones Day is correct and that personal service is required." *Id.* at *2 (emphasis added).

The court also said what might change the result. It stated that "[t]he Court does not foreclose the possibility that some future case might present compelling reasons for a district court to issue an order requiring the presence of a third-party witness who is subject to the court's jurisdiction. But nothing in this case even approaches the type of extraordinary showing that might warrant such an order." *Id.* The court also emphasized that further relief "might be appropriate" if

the testimony were important and "if the Court had reason to believe that the witness was willfully evading a judicial subpoena and that Jones Day knew how to find the witness"—*i.e.*, precisely the facts here. *Id.* at *3.

Epshteyn lives in this District. He is not missing but instead is relying on his concierge—among others—to avoid service. Building staff turned the process server away, and a resident of his apartment instructed the concierge "not [to] let anyone up ever again." Dkts. 87-9, 87-10, 87-11. Epshteyn has appeared in this case through counsel. He has asked this Court to set his deadline to "object or respond to the replacement subpoenas[.]" Resp. at 11. His counsel has negotiated over these subpoenas since July and has had the September subpoenas since at least September 22. Dkt. 87-6, at 8-9. The same counsel accepted service on his behalf in another case in this District. Dkt. 87 at 15 (citing *Barr v. Bannon*, No. 1:26-cv-00452 (ACR)). Every fact that led the court in *Henderson* to deny relief is absent here, and every condition the court indicated might warrant relief is present.

**3. Epshteyn ignores this District's decisions authorizing alternative service.**

The ABA relied on four decisions from this District (*Freeman*, *Alfa Bank*, *U.S. v. George Washington University*, and *Rich*). *See* Dkt. 87 at 14-17. Epshteyn discusses none of them individually, and instead dismisses them in one sentence as "a minority view[.]" Resp. at 8. In particular, his claim that "[c]ourts in this jurisdiction" have rejected alternative service, *id.* (quoting *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 361 (D.D.C. 2011) (Howell, J.)), cannot be squared with *Freeman v. Giuliani*, No. 21-cv-3354 (BAH) (D.D.C. May 10, 2023) (Howell, J.). Judge Howell wrote both decisions; *Freeman* post-dated *Call of the Wild*; and Judge Howell ***quoted*** *Call of the Wild* when authorizing alternative service in *Freeman*.

Similarly, *Alexander v. FBI*, 186 F.R.D. 128 (D.D.C. 1998), did not erect a categorical bar on alternative service. The issue before the court there was whether personal service of a subpoena

had been effected, not the propriety of alternative service. *Id.* at 130. The court in *Alfa Bank* agreed that *Alexander* did not squarely address the availability of alternative service, and explained that "the posture in which the present dispute is presented allows the Court the flexibility, in its equitable discretion, to authorize a manner of service that will suit the ends of Rule 45." *Alfa Bank*, Dkt. 87-13, at 3 n.1. As courts have recognized, "[t]he Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service." *Id.* at 4 (quoting *W. Res., Inc. v. Union Pac. R.R. Co.*, 2002 WL 1822432, at *2 (D. Kan. July 23, 2002)).

**4. Epshteyn's argument that the ABA should exercise more "diligence" in the face of Epshteyn's obvious evasion is wrong.**

Epshteyn says the ABA made "only three attempts over a six-day period" to serve the September subpoenas, and that this falls short of "diligent effort[.]" Resp. at 8-9. But Epshteyn ignores—and does not dispute—the video record showing that after the ABA's server reached his door and no one answered, a resident then instructed building staff "not [to] let anyone up ever again." Dkt. 87-10; Dkt. 87-11, at 6:30-6:50. Diligence does not require undertaking an exercise in futility. Since June, the ABA has made at least ***six*** attempts at service at two addresses; retained an investigative service team; and successfully personally served Epshteyn on June 18. *See* Dkts. 87-2, 87-3, 87-4. Building staff turned the server away on September 10 and 15. Dkt. 87-9. And for months—since July 30, 2026—the ABA has asked Epshteyn's counsel to accept service. Dkt. 87-6, at 15-16. That record exceeds the three attempts found sufficient in *Freeman*, Dkt. 87-12, and the "several" in *Alfa Bank*, Dkt. 87-13.

***

In sum, alternative service is permissible and should be ordered under these circumstances. The Court should order that service may be effectuated here by emailing Epshteyn's counsel of record—who has appeared in this case on his behalf—with certified copies being sent to

Epshteyn's residence. Alternatively, because Epshteyn has now appeared through counsel and is receiving ECF notifications in this matter, the issuance of an order granting alternative service will also be a "sufficiently formal way to assert the compulsory power of the court over him" under the unique facts of this case. *LeFande*, 919 F.3d at 563.

**B. Epshteyn's alternative arguments would guarantee unnecessary delay and require this Court to consider and rule on consecutively-filed motions concerning the same subpoenas.**

As a back-up to his argument that the Court should deny the ABA's motion, Epshteyn suggests that the Court should simply not rule on it at all. Resp. at 9-11. Specifically, Epshteyn argues that the Court should hold the motion for alternative service in abeyance—or "extend the time for Mr. Epshteyn to object, move to quash, or otherwise respond" to the subpoenas, even if the Court permits alternative service—until "the Government's motion to quash is fully and finally resolved." Resp. at 11. In other words, Epshteyn asks the Court to permit him to take no action whatsoever—even simply issuing responses and objections—until some undefined point in the future, after the resolution of any appeal or additional relief the Government may seek after this Court rules on the Government's motion to quash.

Epshteyn's initial argument that he "cannot respond meaningfully until the Government's motion to quash is finally resolved" is false. Resp. at 10. Epshteyn fails to articulate any reason why the pendency of the Government's motion prohibits him from providing his own objections to the document subpoena. By contrast, the court in *United States v. Duran* held that it could not rule on certain third parties' motion to permit disclosure of a specific letter before first determining the "import and admissibility of the document in question" in the underlying criminal case. 884 F. Supp. 526, 527 (D.D.C. 1995). Being forced to rule on the third parties' motion first, under those circumstances, would put "the Court [] in the untenable position, as indicated above, of not being able to make an informed decision in accordance with the law." *Id*. at 528. No such dilemma is

present here—and in any event, the ABA is not suggesting that the Court should rule on any objections yet to be made by Epshteyn before it rules on the Government's pending motion to quash.

Nor is it the "most economical use of the Court's resources" to hold the ABA's motion in abeyance or otherwise permit Epshteyn an indefinite delay of his obligation to respond to the subpoenas. Resp. at 9. To the contrary, under Epshteyn's proposal, the Court must first (1) issue a ruling on the Government's pending motion to quash; then (2) wait an indefinite period of time for the resolution of any further relief sought by the Government in response to the Court's ruling; and only then (3) rule on this motion for alternative service; and ***then*** (4) rule on any new motion to quash filed by Epshteyn concerning the exact same subpoenas that the Court will have already ruled on previously. This is not a good use of the Court's resources. Such sequencing would also prejudice the ABA, which would be delayed even further in obtaining essential discovery in support of its claims.

Finally, granting the ABA's motion for alternative service would not impose an undue burden or expense on Epshteyn. Indeed, Epshteyn and his counsel have likely spent more time and expense fighting for months over service of the subpoenas than they would have by simply responding. Epshteyn points to the fact that the proposed relief would "require Mr. Epshteyn to respond within 14 days of service" of the subpoenas—but this is exactly what is required under Rule 45. *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served"). He has also ***for months*** known of and had copies of the subpoenas but has simply chosen to ignore them. Similarly, Epshteyn objects to the prospect of being forced to move to quash the subpoenas if the motion is granted—but again, this is what is required under Rule 45 of a party seeking to avoid its obligations

under a subpoena. Unsurprisingly, Epshteyn does not identify any authority in support of the notion that it is an undue burden for a third party to be required to comply with the plain language of the Federal Rules.

## CONCLUSION

For the reasons described above, the ABA respectfully requests that the Court grant the ABA's motion for alternative service, Dkt. 87, and deny Epshteyn's purported "cross motion to hold in abeyance" the ABA's motion, Dkt. 94.

Dated: November 13, 2026

*/s/ Stephen Shackelford, Jr.*
Stephen Shackelford, Jr. (D.C. Bar #NY0443)
Beatrice Franklin (*Admitted pro hac vice)*
Jillian Hewitt (*Admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Tel.: 212-336-8330
sshackelford@susmangodfrey.com
bfranklin@susmangodfrey.com
jhewitt@susmangodfrey.com

Neal Manne (D.C. Bar #357012)
Barry Barnett (*Admitted pro hac vice*)
Harry Susman (*Admitted pro hac vice)*
Justin A. Nelson (D.C. Bar #490347)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
nmanne@susmangodfrey.com
bbarnett@susmangodfrey.com
hsusman@susmangodfrey.com
jnelson@susmangodfrey.com

Davida Brook (D.C. Bar #CA00117)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

Tel.: 310-789-3100
dbrook@susmangodfrey.com

Jordan Connors (Admitted *pro hac vice)*
Steve Seigel (D.C. Bar #D00473)
Katherine Peaslee (Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, Washington 98101
Tel.: 206-516-3880
jconnors@susmangodfrey.com
sseigel@susmangodfrey.com
kpeaslee@susmangodfrey.com

*Attorneys for Plaintiff American Bar Association*