**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN BAR ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>EXECUTIVE OFFICE<br>OF THE PRESIDENT, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-01888-AHA |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. A PROTECTIVE ORDER IS WARRANTED TO PRECLUDE THE NOTICED DEPOSITIONS OF HIGH-LEVEL GOVERNMENT OFFICIALS ABSENT EXTRAORDINARY CIRCUMSTANCES. ........ 6

a. High-Ranking Government Officials Are Subject to a Heightened Standard. ........ 8

b. There Are No "Extraordinary Circumstances" Here. ........ 11

c. The Information Plaintiff Seeks Through These Depositions Is Privileged. ........ 16

II. MS. WARFIELD'S DEPOSITION IS UNWARRANTED. ........ 19

CONCLUSION ........ 20

# INTRODUCTION

Plaintiff the American Bar Association ("Plaintiff") filed this lawsuit principally to enjoin the implementation of a hypothetical future "Law Firm Executive Order," although no such Executive Order has been issued in more than a year and half. For months, Defendants served responses and objections to written discovery and produced thousands of pages of agency documents from among nearly 30 named agency defendants, during which time Plaintiff served no interrogatory requests and no deposition notices. Just 30 days before the close of discovery, Plaintiff finally served interrogatory requests on Defendants; and then, before Defendants' responses were due and just two weeks shy of the closure of discovery, Plaintiff noticed its first depositions in the case. Plaintiff seeks the depositions of: Stephen Miller, currently White House Chief of Staff; William Scharf, currently White House Counsel; Minnie Warfield, currently Director of Operations for the White House Office of Presidential Personnel (or "PPO"); Henry Whitaker, former Senior Counselor to the Attorney General; and certain "Undisclosed Individuals the Government was Ordered to Identify in the Court's August 3, 2026 Minute Order, Presently Withheld on Grounds of Privilege."

These extraordinary deposition notices—seeking testimony from among the highest-ranking government officials, including the current White House Chief of Staff and the current White House Counsel—cannot stand. The deposition of such high-ranking government officials in civil litigation is almost never proper. In the rare instances where district courts have granted requests to depose high-ranking officials, courts of appeals across the country have consistently vacated their orders. As those courts have explained, such officials rarely have unique information necessary for civil litigation, and if the judiciary were to subject high-level Executive Branch officials to depositions, it would threaten the separation of powers, chill agency decisionmaking,

discourage public service, and create the potential for abuse or harassment. These rationales apply only more strongly here, where the requested depositions raise particularly significant separation of powers concerns by targeting some of the closest advisors to the President. Given the uniquely sensitive roles at issue, Plaintiff's requested depositions are independently impracticable because any meaningful examination concerning the formulation, purpose, or implementation of the EOs would predictably implicate various governmental privileges, including the Presidential Communications Privilege, leaving little prospect that the depositions would yield essential nonprivileged testimony. These depositions, therefore, would serve no legitimate purpose while needlessly diverting those officials from their significant governmental responsibilities. Indeed, Plaintiff appears to request these depositions primarily to obtain privileged information about the development of executive orders and potential future executive orders. That alone would provide a sufficient basis to grant Defendants' motion to preclude these depositions, as Plaintiff would not only flunk the necessary "extraordinary circumstances" requirement but also herald a violation of the separation of powers. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 389 (2004).

As for Ms. Warfield, although Defendants do not contend that she is a high-ranking official such that extraordinary circumstances are required, she is, in any event, an employee of the White House Office, and Plaintiff can identify no basis to compel her testimony concerning internal White House matters.

Thus, Defendants maintain that Plaintiff's efforts to compel discovery from the White House in this case is generally improper and should not be permitted. But even if *any* discovery from the White House is found to be permissible, the depositions at issue are plainly unwarranted, because Plaintiff has not established and cannot establish that these depositions are so important

that the court should countenance the threat to the separation of powers that they present. This Court should grant Defendants' motion for a protective order.

## BACKGROUND

On June 4, 2026, the Court entered its Scheduling Order, permitting each side to take 10 depositions. ECF No. 57 at 1. The Court also permitted Plaintiff to serve "15 interrogatories directed to the Executive Office of the President ("EOP"), 24 interrogatories to be allocated among the non-EOP agency defendants, and 5 common interrogatories directed to all non-EOP agency defendants." *Id.* The Court set the discovery deadline for November 12, 2026.[1]

Even before the Court's entry of the Scheduling Order, on May 13, 2026, Plaintiff propounded 25 requests for production ("RFP") on Defendants. Sixteen of those RFPs were directed at the EOP. In response to Plaintiff's RFPs, the non-EOP Defendants produced responsive, non-privileged documents and privilege logs. As for the EOP, it responded to the RFPs directed at it by asserting objections based on *Cheney*, 542 U.S. 367. Plaintiff filed a Motion to Compel as to its RFP Nos. 1-16. ECF No. 61. On July 31, 2026, the Court held a hearing on Plaintiff's Motion to Compel. Following the hearing, the Court entered a Minute Order, dated August 3, 2026, directing Defendants to "file a notice with the court identifying the names of the individuals at issue for [RFPs] 11 and 12 and the custodians for [RFPs] 13, 15, and 16" or invoke privilege. Minute Order, August 3, 2026 ("Minute Order"). In response to the Minute Order, Defendants formally asserted the Presidential Communications Privilege as to the identities of the individuals at issue in RFPs 11 and 12. ECF No. 79.

---

[1] The fact discovery deadline currently remains November 12, 2026, subject to the parties' stipulation. *See* ECF No. 97 ("Except as agreed in this Stipulation and/or as ordered by the Court" which the Court approved, no Party may serve any new discovery request, deposition notice, or subpoena after the Fact Discovery Deadline.").

Plaintiff also served 108 requests for admission ("RFA") on August 4, 2026. Ex. 1. Defendants responded to the RFAs by serving their responses and objections. Ex. 2. And on October 13, 2026—just 30 days before the close of discovery—Plaintiff served Defendants with 23 interrogatories. Ex. 3.

Then, at the eleventh hour, without first seeking the deposition of any other individual or making any effort to confer with the government, on October 23, 2026, Plaintiff noticed the depositions of Stephen Miller (Ex. 4), William Scharf (Ex. 5), Minnie Warfield (Ex. 6), Henry Whitaker (Ex. 7), and the "Undisclosed Individuals the Government was Ordered to Identify in the Court's August 3, 2026 Minute Order, Presently Withheld on Grounds of Privilege" (Ex. 8)—most of whom are high-ranking government officials, including some of the highest level officials within the White House Office. Stephen Miller is the White House Chief of Staff; William Scharf is the White House Counsel; Minnie Warfield is the Director of Operations for the White House Office of Presidential Personnel[2]; and Henry Whitaker is the former Senior Counselor to the Attorney General.[3] Likewise, although Defendants have previously explained, *see* ECF Nos. 79, 79-1 ("Lawkowski Decl."), that the Presidential Communications Privilege protects the identities of the noticed "Undisclosed Individuals," those individuals "are (or were in communication with) high-ranking White House advisors and their staffs within the Executive Office of the President[,] who have the responsibility of advising, assisting, and implementing decisions of the President." Lawkowski Decl. ¶ 5.

---

[2] Ms. Warfield is listed in the Annual Report to Congress on White House Staff. Exec. Off. of the President, *Annual Report to Congress on White House Office Personnel* at 7 (July 1, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/07/2026-Annual-Report-to-Congress-on-White-House-Staff.pdf.

[3] Mr. Whitaker is listed on OPM's website by searching for the Department of Justice, Office of the Attorney General at https://www.opm.gov/about-us/open-government/plum-reporting/plum-data/.

On November 16, 2026, the Court issued an order granting in part and denying in part Plaintiff's motion to compel. ECF No. 101. The order directed the government to respond to narrowed forms of [RFPs] 1, 2, 7, 9, and 13, further instructing the parties to "meet and confer to negotiate reasonable search terms and other parameters, and file a joint status report proposing a feasible schedule for the government to respond" to the RFPs. *Id.* at 25–26.

## LEGAL STANDARD

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1).

While the burden typically falls on the movant, that burden is reversed where a party seeks deposition testimony from a high-level government official. *See, e.g.*, *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *Peoples v. United States Dep't of Agriculture*, 427 F.2d 561, 567 (D.C.Cir.1970); *see also In re United States (Bernanke)*, 542 F. App'x 944, 948 (Fed. Cir. 2013) (stating that the party seeking such testimony bears burden of proving extraordinary circumstances "even in cases . . . in which the government is a movant"); *In re United States (Holder),* 197 F.3d 310, 316 (8th Cir. 1999) ("Lee has not established extraordinary circumstances requiring the discovery sought from Attorney General Reno and Deputy Attorney General Holder."). Indeed, "there is a presumption against deposing high-ranking government officials." *Kelley v. FBI*, No. 13-cv-0825 (ABJ), 2015 WL 13648073, at *1 (D.D.C. July 16, 2015) (citing *Peoples*, 427 F.2d at 567).

## ARGUMENT

### I. A PROTECTIVE ORDER IS WARRANTED TO PRECLUDE THE NOTICED DEPOSITIONS OF HIGH-LEVEL GOVERNMENT OFFICIALS ABSENT EXTRAORDINARY CIRCUMSTANCES.

Plaintiff's attempt to depose several high-ranking government personnel is not permitted absent a heightened showing Plaintiff has not and cannot make. "[T]here is a presumption against deposing high-ranking government officials." *Kelley*, 2015 WL 13648073, at *1 (citing *Peoples*, 427 F.2d at 567). Thus, courts have long held that compelling the testimony of high-ranking government officials is justified only in "extraordinary circumstances." *Simplex*, 766 F.2d at 586. That is because "the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers," *In re United States (Jackson)*, 624 F.3d 1368, 1372 (11th Cir. 2010), and "[t]he duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere," *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (per curiam). Such depositions also "create[] 'a tremendous potential for abuse or harassment.'" *K.C.R. v. County of Los Angeles*, No. 13-cv-3806 (SHS), 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012)). Accordingly, "a district court should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding." *In re United States (Jackson)*, 624 F.3d at 1376.[4]

---

[4] This rule has been recognized by virtually every circuit court of appeals. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203–04 (2d Cir. 2013); *In re United States (Jackson)*, 624 F.3d at 1372–73, 1376; *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex Time Recorder Co.*, 766 F.2d at 586–87; *Peoples*, 427 F.2d at 567 ("[S]ubjecting a cabinet officer to oral deposition is not normally countenanced."); *Warren Bank v. Camp*, 396 F.2d 52, 56 (6th Cir. 1968); *see generally United States v. Morgan*, 313 U.S. at 422. Courts of appeals routinely grant the extraordinary relief of mandamus to prevent such depositions. *See, e.g.*, *In re Musk*, 169 F.4th at 449; *In re U.S. Dep't of Educ.*, 25 F.4th at 706; *In re Clinton*, 973 F.3d 106, 109 (D.C. Cir.

This demanding standard is necessary "(1) to protect the integrity and independence of the government's decision-making process; (2) to permit high-ranking government officials to perform their official tasks without disruption or diversion; and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (cleaned up). The compelled testimony of high-ranking personnel, moreover, raises significant "separation of powers concerns." *In re United States (Jackson)*, 624 F.3d at 1372 (quoting *In re United States (Kessler)*, 985 F.2d at 512; *see also United States v. Morgan*, 313 U.S. 409, 422 (1941); *In re Musk*, 169 F.4th 445, 448 (4th Cir. 2026). Indeed, the "separation of powers" concerns raised by all high-level Executive Branch depositions, *In re United States (Jackson)*, 624 F.3d at 1372, are further heightened in the context of White House deponents. In *Cheney*, 542 U.S. 367, the Supreme Court explained that discovery directed to the Office of the Vice President raised "special considerations" regarding "the Executive Branch's interests in maintaining the autonomy of its office," the "energetic performance" of the Commander-in-Chief's "constitutional responsibilities," and "[t]he high respect that is owed to the office of the Chief Executive." *Id.* at 382, 385 (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997)). The Court further found "no support for the proposition that the Executive Branch 'shall bear the burden' of invoking executive privilege" on a "particularized" basis in the course of discovery. *Id.* at 388 (quoting *In re Cheney*, 334 F.3d 1096, 1105 (D.C. Cir. 2003)). That could include, for example, having to make near-constant instructions for the deponent not to answer questions that call for privileged information.

---

2020); *In re United States (Vilsack)*, No. 14-5146, 2014 U.S. App LEXIS 14134, at *1–2 (D.C. Cir. July 24, 2014); *In re United States (Holder)*, 197 F.3d at 316; *In re United States (Kessler)*, 985 F.2d at 513.

Thus, to meet the "extraordinary circumstances" standard, Plaintiff must "establish at a minimum[,] that the [personnel] possess information essential to [their] case which is not obtainable from another source." *In re United States (Holder)*, 197 F.3d at 313–14 (citation omitted); *see also Blankenship v. Fox News Network, LLC*, No. 2:19-cv-00236, 2020 WL 7234270, at *6 (S.D. W. Va. Dec. 8, 2020) (explaining that a party seeking to depose a high-ranking governmental official must "make an actual showing" that the official "possesses personal knowledge relevant to the litigation" that is "essential to that party's case" and that "is not available through any alternative source or less burdensome means" (citation omitted)).

At the outset, no discovery is warranted because Plaintiff's claims fail as a matter of law. This case is a fishing expedition in search of a jurisdictional hook. Virtually all of the discovery propounded here concerns past events, most involving the law firms that initiated their own lawsuits, obtained judgments on the merits, and whose appeals are now pending before the D.C. Circuit. But intrusive discovery into those historical facts does not suffice to establish the sort of injury necessary to justify the declaratory and injunctive relief Plaintiff seeks. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Nonetheless, even if discovery were warranted, Plaintiff cannot demonstrate the extraordinary circumstances necessary to justify the requested depositions. It can neither identify relevant information uniquely possessed by the noticed officials nor show that such information cannot be obtained through less intrusive means of discovery.

**a. High-Ranking Government Officials Are Subject to a Heightened Standard.**

In this instance, the noticed individuals are nearly all high-ranking current and former government officials whose testimony may not be compelled absent extraordinary circumstances.

Start with the White House officials. Mr. Miller currently serves as the White House Chief of Staff and previously served as the White House Deputy Chief of Staff for Policy.[5] Mr. Scharf currently serves as the White House Counsel and previously served as the White House Staff Secretary.

These senior White House officials plainly qualify for protection from testimony. *See*, *e.g.*, *In re Cheney*, 544 F.3d at 314 (Vice President's Chief of Staff); Order, *In re Murthy*, No. 22-30697, 2023 U.S. App. LEXIS 36375, at *5 (5th Cir. Jan. 5, 2023) (per curiam) (concluding that former White House Press Secretary is "high-ranking" because "as a former Assistant to the President, Psaki was one of those in the most senior rank in the White House other than Chief of Staff"); Order, *In re Murthy*, ECF No. 49, No. 22-30697 (5th Cir. Nov. 21, 2022) (per curiam) (Deputy Assistant to the President); *Newman*, 531 F. Supp. 3d at 189–91 (former White House Chief of Staff, former Deputy Counsel and Deputy Assistant to the President); *Alexander v. FBI*, 186 F.R.D. 1, 3–4 (D.D.C. 1998) (Assistant to the President).

The same is true for Mr. Whitaker, who was until very recently Senior Counselor to the Attorney General,[6] which the "Plum Book"—the authoritative document of Federal civil service leadership positions—indicates is a "Senior Executive Service" political-appointee position. *See* S. Comm. on Homeland Sec. & Governmental Affs.,118th Cong., Policy and Supporting Positions 200 (2024), https://perma.cc/25LJ-GZTU. Mr. Whitaker's former role involves directly reporting to and advising the Attorney General on policy implementation strategy, constitutional legal issues,

[5] *See* The White House, *President Trump Names Stephen Miller as 33rd White House Chief of Staff* (Nov. 6, 2026), https://www.whitehouse.gov/releases/2026/11/president-trump-names-stephen-miller-as-33rd-white-house-chief-of-staff/

[6] Mr. Whitaker is no longer in government service and is no longer in Defendants' control, such that Plaintiff must serve a subpoena for his testimony irrespective of any ruling on this motion because Defendants cannot accept service on his behalf absent his explicit authorization.

and appearing in various district and circuit courts in high profile cases. In other words, Mr. Whitaker was the confidential advisor to the Attorney General. Although Mr. Whitaker was not the head of any agency, "high-ranking" encompasses more than just cabinet-level officials or agency heads. *See Newman*, 531 F. Supp. 3d at 189. Indeed, this district has extended the doctrine to other political Senior Executive Service positions, such as the Deputy Chief of Staff of the Environmental Protection Agency. *See Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C. 2002). That Mr. Whitaker has left government service does not alter this analysis. Courts have recognized that the bar on depositions of high-ranking Executive Branch personnel "is no less applicable to former officials than to current officials," even though any immediate "interference with official duties is absent." *FDIC v. Galan-Alvarez*, Case No. 15-mc-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sep. 4, 2015) (citation omitted); *see* Order at *4–5, *In re Murthy*, 2023 U.S. App. LEXIS 36375 ("We agree with other circuits that [the doctrine] is equally applicable to former officials, lest they be ensnared in unnecessary discovery upon leaving office."); *Newman*, 531 F. Supp. 3d at 188 ("The need to protect the integrity of the underlying decision-making process and encourage public service by protecting officials from 'indiscriminate depositions' continue to persist after the official leaves government service. Therefore, the apex doctrine still applies to former officials." (cleaned up)); *Lederman*, 731 F.3d at 203–04 (former deputy mayor); *Blankenship*, 2020 WL 7234270, at *6. If that doctrine "is to have any meaning, the protections must continue upon the official's departure from public service." *United States v. Wal-Mart Stores, Inc.*, No. 01-cv-152 (PJM), 2002 WL 562301, at *2–4 (D. Md. Mar. 29, 2002); *see also In re U.S. Dep't of Educ.*, 25 F.4th at 705; *In re United States (Bernanke)*, 542 F. App'x at 949.

Furthermore, as Defendants stated in their "Notice Regarding the Court's August 3 Minute Order," ECF No. 79, the individuals at issue for RFP Nos. 11 and 12 and the non-public custodians

at issue for RFP Nos. 13, 15, and 16 are protected by the Presidential Communications Privilege. *See* Lawkowski Decl. ¶ 5. Defendants assert that these individuals are also high-ranking government officials and explicitly reserve the right to make further arguments as to why they should not be deposed, should Defendants be compelled to disclose their identities.

Thus, Mr. Miller, Mr. Scharf, and Mr. Whitaker are high-ranking officials. What is more, deposing two of the top principal advisors to the President and a director of a White House component would clearly intrude on the President's performance of his constitutional duties, triggering substantial separation-of-powers concerns. *See Cheney*, 542 U.S. at 383. And Mr. Whitaker was a close, confidential advisor to a cabinet head. Plaintiff, therefore, must show "extraordinary circumstances" to justify depositions.

**b. There Are No "Extraordinary Circumstances" Here.**

Plaintiff cannot demonstrate the extraordinary circumstances necessary to justify these depositions. To do so, Plaintiff "must show that the high-ranking officials have firsthand information that is relevant and material to [their] claims and that cannot be reasonably obtained from other sources or modes of discovery." *In re Musk*, 169 F.4th at 448. Plaintiff fails to make this showing at every front.

Critically, Plaintiff cannot show that any noticed witness possesses unique personal knowledge of those facts or that the information cannot be obtained through other, less intrusive means of discovery. Indeed, Plaintiff's written discovery directed at the White House remains unexhausted. The Court only recently resolved one discovery dispute, granting in part Plaintiff's motion to compel responses from the EOP to RFP Nos. 1–16 over Defendants' *Cheney* objections and directing responses to a subset of those requests. ECF No. 101. In doing so, the Court expressly adopted a phased approach to discovery, explaining that discovery should "proceed in stages" and that "any further discovery" should be pursued only upon "a showing that it is necessary" after the

initial phases are completed. *Id.* at 8–9. And, here, additional discovery disputes remain to be briefed under the consolidated briefing schedule governing Plaintiff's cross-motion to compel responses to its RFAs and first set of interrogatories. *See* Minute Order, Nov. 10, 2026. Until these avenues are exhausted, Plaintiff cannot establish that depositions of high-level government officials are necessary. The ultimate resolution of these motions may well obviate any need for the requested depositions.

Plaintiff's request for these depositions therefore fails at the outset. *See In re U.S. Dep't of Educ.*, 25 F.4th at 704 ("Indeed, the district court held that 'literal exhaustion of alternatives' was not required. This was error. Exhaustion of all reasonable alternative sources is required, and that requirement was not met here."); *cf. In re Cheney*, 544 F.3d at 314 ("The duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere."). Regardless of Defendants' objections to Plaintiff's written discovery in light of the burden imposed on the White House, Plaintiff must first exhaust available alternative means of discovery before seeking to depose high-ranking officials. Plaintiff's failure to exhaust alternative avenues of discovery is dispositive. *See In re Musk*, 169 F.4th at 449 ("And as for the district court's statement that petitioners had not responded adequately, or at all, to written discovery requests, nothing in the district court's order, nor in our review of the record, indicates that plaintiffs' only alternative is to depose Musk, Marocco and Lewin."). Plaintiff simply cannot show the extraordinary circumstances necessary to move forward with the requested depositions at this juncture.

A look at the circumstances of each noticed individual further demonstrates Plaintiff's inability to meet the high standard required to depose them. Start with Mr. Miller. The Complaint does not allege that Mr. Miller had any direct role in formulating these EOs, or even that he has

unique personal knowledge of them. Indeed, Mr. Miller is mentioned only three times in the 278-paragraph Complaint. Compl. ¶¶ 5, 139, 167. Two of those references repeat the same quote from the same June 1, 2025 *Wall Street Journal* article speculating about President Trump's supposed continued interest in "Law Firm Orders," *see id.* ¶¶ 5, 167, though none has been issued since April 9, 2025, *id.* ¶ 120. The third reference recounts an offhand remark about the agreements at a signing ceremony. *Id.* ¶ 139. The Complaint nowhere alleges that Mr. Miller played any role in formulating the EOs, much less that he possesses unique personal knowledge relevant to Plaintiff's claims. And even assuming Mr. Miller possesses relevant information, Plaintiff has not shown that his testimony is essential to any claim or is unavailable through other sources. *See In re U.S. Dep't of Educ.*, 25 F.4th at 704 ("Finally, to take the deposition of a cabinet secretary, the information sought cannot be obtainable in any other way. We cannot intrude into the workings of the executive branch and the time of that branch's leaders if there is another way to obtain the necessary information."). Indeed, as the Fourth Circuit recently emphasized, "[d]eposing high-ranking officials is a measure of last, not first, resort." *In re Musk*, 169 F.4th at 449. On top of all that, as the principal senior advisor to the President, any meaningful testimony from Mr. Miller concerning the formulation, consideration, or rationale for the Executive Orders would likely implicate the Presidential Communications Privilege, such that any deposition would be a futile exercise consisting of instructions not to reveal privileged information. *See In re Sealed Case*, 121 F.3d 729, 757 (D.C. Cir. 1997) ("The privilege also extends to communications authored or solicited and received by those members of an immediate White House advisor's staff who have broad and significant responsibility for investigating and formulating the advice to be given to the President on a particular matter.").

Turn next to Mr. Scharf. The Complaint references some public exchanges between him and the President during two signing ceremonies. Compl. ¶¶ 76, 121, 161. But, as the Fifth Circuit concluded, "[i]t is entirely unexceptional for a public official to comment publicly about a matter of public concern. If doing so imparts unique knowledge, high-level officials will routinely have to testify." *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023). Subjecting Mr. Scharf to compelled testimony based on such unremarkable statements would render "the 'exceptional circumstances test' a hollow doctrine." *In re Murthy*, 2023 U.S. App. LEXIS 36375, at *8 (2023) (citation omitted). And even assuming he has some personal knowledge about the EOs based on his previous role as White House Staff Secretary, that still does not warrant his deposition. In granting mandamus preventing the deposition of three high-ranking government officials, the Fourth Circuit explained that it is not enough to show that such officials "have firsthand information that is relevant and material to plaintiffs' claims." *In re Musk*, 169 F.4th at 448. The Fourth Circuit emphasized that the "fact that plaintiffs may need the information and that" high-ranking government officials "may have firsthand information" was "not, by itself, extraordinary." *Id.* at 448–49. "If it were," the Fourth Circuit reasoned, "the limitation on deposing high-ranking government officials would be no limit at all." *Id.* at 449. Rather, Plaintiff must show that the relevant and material information it seeks "cannot be reasonably obtained from other sources or modes of discovery," which has not yet been exhausted so far. *Id.* at 448. Moreover, even if Mr. Scharf had knowledge of the formulation of the EOs from his previous role as White House Staff Secretary, that would "merely reinforce the point that [he] was high-ranking," not "that any knowledge [he] gained . . . was unique[.]" *Galan-Alvarez*, 2015 WL 5602342, at *5. At most, Mr. Scharf's deposition might bear only tangentially on Plaintiff's claims, which falls well short of the showing necessary to overcome the "presumption against deposing high-ranking government

officials." *Newman*, 531 F. Supp. 3d at 188 (citation omitted); *see In re U.S. Dep't of Educ.*, 25 F.4th at 703–04 ("The district court clearly erred in allowing DeVos's deposition because the information sought from DeVos, while perhaps relevant, is not essential to the claims alleged by plaintiffs. . . . In fact, plaintiffs do not allege that DeVos has information that is essential to their case."). Thus, Plaintiff comes nowhere close to demonstrating exceptional circumstances exist that would warrant deposing Mr. Scharf.

Plaintiff likewise cannot justify deposing Mr. Whitaker. Defendants produced several emails reflecting that he was involved in the review of various documents mentioned in the Complaint. Such documents include nonfinal drafts of an executive order concerning Paul Weiss, *see generally* ECF No. 61-4, as well as a DOJ memorandum signed by the Deputy Attorney General. *See generally* Compl. ¶¶ 89, 157. But those documents do not establish that Mr. Whitaker possesses unique personal knowledge of any relevant facts in this case. The fact that he "may have firsthand information about the identity of decisionmakers and the timing of decisions is not, by itself, extraordinary." *In re Musk*, 169 F.4th at 448–49. Nor can Plaintiff establish that the information it seeks from Mr. Whitaker is unavailable from alternative sources of discovery. *See id*. And, in all events, any meaningful testimony Mr. Whitaker might provide concerning the formulation, review, or implementation of the EOs would necessarily derive from knowledge acquired in his capacity as a senior Department of Justice official and would likely implicate various governmental privileges, including the attorney-client privilege.

Finally, Plaintiff cannot show extraordinary circumstances warranting the depositions of the "Undisclosed individuals the Government was ordered to identify in the Court's August 3, 2026 Minute Order, presently withheld on grounds of privilege." That request is plainly premature in light of the Executive's invocation of the Presidential Communications Privilege. *See* ECF No.

79; *see generally* Lawkowski Decl. And Plaintiff can only speculate that it can establish the extraordinary circumstances necessary for the deposition testimony of these individuals to go forward. Plaintiff, therefore, fails to meet this heavy burden. *See Galan-Alvarez*, 2015 WL 5602342, at *3; *In re FDIC*, 58 F.3d 1055, 1061 (5th Cir. 1995) (stating that a "strong showing [is] necessary for a finding of exceptional circumstances").

In sum, Plaintiff has neither shown that any of these officials possesses unique personal knowledge relevant to its claims nor demonstrated that it has exhausted available alternative means of discovery. *See In re Musk*, 169 F.4th at 449 (granting mandamus preventing deposition of high-ranking government personnel where plaintiffs had not exhausted other forms of written discovery); *see also In re U.S. Dep't of Educ.*, 25 F.4th at 704. Plaintiff therefore cannot establish the extraordinary circumstances required to overcome the presumption against deposing high-ranking government officials.

**c. The Information Plaintiff Seeks Through These Depositions Is Privileged.**

Plaintiff cannot meet its heavy burden to justify these depositions for another reason: Plaintiff's written discovery requests demonstrate that it seeks information protected by well-established governmental privileges, including the Presidential Communications Privilege and the attorney-client privilege, and the proposed depositions would necessarily probe the same subject matter.

The Presidential Communications Privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974); *see In re Sealed Case*, 121 F.3d 729, 743 (D.C. Cir. 1997) (describing the privilege's "constitutional origins"). The privilege is broad, protecting the "confidentiality of Presidential communications in performance of the President's responsibilities[,]" *Nixon*, 418 U.S. at 711, as well as "documents or other materials that reflect

presidential decisionmaking and deliberations[,]" *In re Sealed Case*, 121 F.3d at 744. The privilege also extends to communications either authored or solicited and received by immediate White House advisors in the Executive Office of the President and their staff related to presidential decisionmaking. *See id*. at 754.

Here, Plaintiff has propounded written discovery seeking information that is at the heart of presidential decisionmaking and deliberations and that is therefore protected from disclosure under the Presidential Communications Privilege, among other governmental privileges. It is nearly certain that Plaintiff's deposition questions would cover the same ground. For example, RFA No. 20 asks the Executive Office of the President to "[a]dmit that the reasons stated in the 'Addressing Risks From Paul Weiss' Executive Order for its issuance represent the *actual* reasons the Administration issued that order." Ex. 1 at 9 (emphasis added). Similarly, RFA No. 21 asks whether "the Administration applied Criteria in determining whether [Paul Weiss] would be made the subject of an Executive Order." *Id*. at 9. And RFA No. 101 seeks an admission about whether "the Trump Administration applied a consistent standard when determining whether to issue each Law Firm Order." *Id*. at 23.

The same theme runs through Plaintiff's interrogatories. Interrogatory No. 3 requests, "[f]or each Law Firm Order, identify the person(s) who first proposed or recommended the named law firm as its subject, and state the date of that proposal or recommendation." Ex. 3 at 7. Interrogatory No. 4 asks for the identification of "each law firm and/or attorney, other than those named in the Law Firm Orders, that EOP considered, proposed, or prepared as the subject of an executive order, presidential memorandum, or Implementation Measure, and state the date(s) of that consideration." *Id*. And Interrogatory No. 9 asks the White House to "[d]escribe each means

by which EOP monitors, tracks, or enforces compliance with the Law Firm Agreements, and identify the person(s) responsible." *Id*. at 8.

Plaintiff's written discovery evidently seeks information about the bases for, and the internal processes underlying, presidential decisionmaking regarding the EOs and law firm agreements. Taken together, the RFAs and interrogatories leave little doubt about what Plaintiff hopes to obtain through the requested depositions: testimony regarding the government's internal communications, deliberations, recommendations, and decisionmaking concerning those actions. But such information concerning the participants, timeline, and scope of the President's decisionmaking would reveal the inner workings of the President's decisionmaking process and is precisely the type of confidential information that various governmental privileges—including, chiefly, the Presidential Communications Privilege—are intended to protect. *See In re Sealed Case*, 121 F.3d at 744 (stating that the privilege protects "documents or other materials that reflect presidential decisionmaking and deliberations"); *Nixon v. Sirica*, 487 F.2d 700, 717 (D.C. Cir. 1973) (explaining that confidentiality is needed to protect "the effectiveness of the executive decision-making process").[7]

Accordingly, because Plaintiff has failed to show that the noticed individuals possess relevant, *nonprivileged* information, *see* Fed. R. Civ. P. 26(b)(1), it has necessarily failed to establish the extraordinary circumstances necessary to take the depositions of such high-ranking government officials, and the depositions should be precluded in their entirety. No high-ranking official should have to take time away from his or her crucial responsibilities to sit for a deposition where he or she would not be permitted to answer the majority (if not all) of the questions because

[7] The proposed depositions of Mr. Scharf (as White House Counsel) and Mr. Whitaker (as a representative of the Department of Justice) also implicate the attorney-client privilege.

they would call for privileged information. *Cf. Cheney*, 542 U.S. at 387–89 (finding "no support for the proposition that the Executive Branch shall bear the burden of invoking executive privilege with sufficient specificity and of making particularized objections" (citation omitted)). That is especially true given the Supreme Court's stern admonition that discovery of information from the Executive Office of the President should be a last resort. *See id*. at 389.

In short, Plaintiff's RFAs and interrogatories make clear that it seeks to discover how the law firm EOs and agreements were developed, who participated in that process, what advice and recommendations were provided, and why particular decisions were made. Those inquiries strike at the core of protected Executive Branch deliberations. Because the requested depositions would necessarily traverse the same subject matter, they would create a substantial risk of intrusion into privileged communications, deliberations, and mental processes. That is yet another reason Plaintiff cannot satisfy its heavy burden to justify these depositions.

## II. MS. WARFIELD'S DEPOSITION IS UNWARRANTED.

Defendants are not seeking a protective order as to Ms. Warfield on the basis of the apex doctrine, but this Court should still not countenance her deposition. Even under ordinary circumstances, "'the relevance standard of Rule 26 is not without bite,' and will not allow parties to 'explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 5 (D.D.C. 2022). And this is no ordinary circumstance—Ms. Warfield is a White House Office employee, and as this Court has repeatedly acknowledged, "[s]pecial considerations control when the Executive's interests in maintaining its autonomy and safeguarding its communications' confidentiality are implicated." *Cheney*, 542 U.S. at 370.

In light of her status and *Cheney*'s heightened burden, Plaintiff is not entitled to her deposition. Here, Plaintiff has not shown that she has any meaningful personal knowledge of the

Law Firm Orders or agreements. Of the thousands of pages of documents that Defendants have produced so far, Ms. Warfield appears in a single email, which she sent from one of her government email addresses to another, with no body text, containing only an attachment. ABA v. EOP_STATE_00000104. The attachment to that email is a State Department document—that is largely non-responsive—summarizing requirements for numerous EOs, containing only a small, isolated portion concerning the Law Firm Orders at issue here. ABA v. EOP_STATE_00000105. That email says nothing about Ms. Warfield's knowledge of the EOs, let alone any meaningful personal knowledge. In other words, nothing in the record indicates Ms. Warfield has any personal knowledge relevant to the claims at issue in this case.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion for a protective order.

Dated: November 18, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

MICHAEL VELCHIK,
Senior Counsel, Civil Division

DIANE KELLEHER
Director, Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director, Federal Programs Branch

CHRISTOPHER M. LYNCH
Chief Litigation Counsel, Federal Programs Branch

*/s/ James J. Wen*__
JAMES J. WEN (NY Bar No. 5422126)
ADAM S. FOX
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-8185
Email: james.j.wen@usdoj.gov

*Attorneys for Defendants*